1999 UT App 012

**Mary Ann MOON, Plaintiff and Appellee,**

v.

**Stanley W. MOON, Defendant and Appellant.**

No. 971542–CA.

Court of Appeals of Utah.

Jan. 22, 1999.

Randy S. Ludlow, Salt Lake City, for Appellant.

Hollis S. Hunt, Draper, for Appellee.

Before GREENWOOD, Associate P.J., and BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

¶ 1 Mr. Moon challenges the trial court's construction and enforcement of his divorce decree on three grounds, arguing that: (1) the trial court erred when it considered Ms. Moon's order to show cause, in addition to considering her petition for modification, which was filed on the recommendation of a domestic relations commissioner; (2) the trial court erred when it interpreted the original decree to require that the income from MST Trucking attributed to Mr. Moon's share of ownership be included in the calculations for purposes of enforcing the original alimony award; and (3) the trial court erred when it did not proceed with a modification analysis based on the *Jones* factors after concluding there had been a material change in the parties' circumstances. He also challenges the trial court's award of attorney fees to Ms. Moon.

¶ 2 We affirm in part and remand for further proceedings.

## BACKGROUND

¶ 3 The parties were married on September 18, 1971. Four children were born during the marriage. Ms. Moon stayed home with their children while they were young, and she now teaches kindergarten part time. Mr. Moon is a vice president and one-fifth shareholder of MST Trucking.

¶ 4 After Ms. Moon filed for divorce in April 1990, the parties negotiated an agreement and presented it orally to the court at a pretrial hearing on June 30, 1992. This stipulated agreement became the basis of the trial court's Findings of Fact and Conclusions of Law (1992 Findings) and the final Decree of Divorce. The 1992 Findings provided that

Based upon the incomes of the parties, [Mr. Moon] has agreed to pay to [Ms. Moon] the sum of $2,400.00 per month as alimony. [Mr. Moon] will also pay to [Ms. Moon], as additional alimony thirty percent (30%) of the gross amount of any bonuses he receives as additional income above his annual base salary which is currently $150,000.00 without bonuses. [Mr. Moon] will provide independent verification to [Ms. Moon] of any and all bonuses received. The parties agree that this form of payment of alimony is being adopted and agreed upon because [Mr. Moon] receives a monthly gross income of $12,500.00 per month. Accordingly, after deductions for state and federal taxes, social security, health care premiums, child support and alimony, [Mr. Moon] will be left with approximately $2,500.00 net income to meet his own monthly financial needs. The payment of alimony in the total amounts required when considering [Mr. Moon's] annual income can only be made after [Mr. Moon] has received his bonus. [Mr. Moon] shall make distribution to [Ms. Moon] of thirty percent (30%) of his gross bonus immediately upon his receipt thereof, and the parties recognize that this will qualify as payment of alimony in addition to $2,400.00 per month paid from [Mr. Moon's] base salary. Based upon [Mr. Moon's] current bonus of $100,000.00 per year, the amount of alimony paid from [Mr. Moon's] bonuses would be $30,000.00 additional annual payment of alimony.

¶ 5 The decree's terms regarding alimony provided only that

[Mr. Moon] shall pay to [Ms. Moon] the sum of $2,400.00 per month as alimony plus thirty percent (30%) of the gross income of any bonus he may receive each calendar year. [Mr. Moon] shall also provide independent verification to [Ms. Moon] of all bonuses [Mr. Moon] receives. He shall pay the 30% to [Ms. Moon] immediately upon receipt of the bonuses.

¶ 6 The parties' divorce was finalized on August 26, 1992. Shortly thereafter, MST Trucking was reorganized as an S corporation. As a result of this change in corporate structure, Mr. Moon's 1993 base salary increased from $150,000 to $200,000, and he no longer received any additional payments called "bonuses." Rather, he periodically received "distributions," which were reported to the IRS on Schedule K–1 of his federal income tax return as "ordinary income (loss) from trade or business activities."

¶ 7 Mr. Moon stayed current on his $2,400 monthly obligation to Ms. Moon, and in 1993 also paid her thirty percent of the much smaller reported annual "distributions" he received.[1] He failed to make an annual payment of alimony in 1994 and the amounts paid in 1993 and 1995 were substantially less than the amounts computed at the time of the decree. Mr. Moon did not verify his annual income for 1993, 1994, or 1995.

¶ 8 On July 6, 1995, Ms. Moon petitioned the court for an order to show cause. She asked the court to enforce the decree by (1) requiring Mr. Moon to verify his annual income from MST Trucking and (2) entering judgment for all delinquent sums Mr. Moon should have paid her as alimony. Mr. Moon responded that, because MST Trucking no longer paid him "bonuses," he was only required to pay $2,400 per month to Ms. Moon, and that he need not verify that he did not receive any bonuses. This dispute revealed a basic disagreement over the meaning and interpretation of the decree's alimony terms.

¶ 9 The Order to Show Cause was heard before a domestic relations commissioner, who filed a Minute Entry opining that "this is a modification issue to be dealt with under a petition to modify," and recommending that the trial court dismiss Ms. Moon's Order to Show Cause. Acting on the commissioner's recommendation, Ms. Moon next filed a Petition for Modification on March 22, 1996, asking that the court "modify" the decree by requiring Mr. Moon to pay $2,400 per month plus thirty percent of his income over $150,-000. Later, because Ms. Moon did not object, the trial court signed the commissioner's order.

¶ 10 Following a pretrial conference, the trial court stated that "this should be before the court on the order to show cause and not on the petition to modify." These issues

went to trial on May 29, 1997. However, during the trial, the court also concluded that, although it was treating the case as an order to show cause, the change of corporate structure and resulting change in the nature of Mr. Moon's income were material changes of circumstance sufficient to support Ms. Moon's petition to modify. The court construed the decree to require alimony payments of $2,400 per month, and thirty percent "of all amounts he receives [from MST Trucking] over that, whether that's income or bonuses or distributions or anything else," and ordered Mr. Moon to verify his income[2] whether or not he receives "bonuses." The court also awarded attorney fees to Ms. Moon.

¶ 11 This appeal followed.

## I. PROCEEDINGS ON THE ORDER TO SHOW CAUSE

¶ 12 Mr. Moon argues the trial court erred in reconsidering the order to show cause, and not considering only the petition to modify as the commissioner had recommended. Whether the trial court erred in doing so is a question of law which we review for correctness, according no particular deference to the trial court's actions. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 13 We conclude the trial court did not commit reversible error when it reconsidered and decided to proceed on the order to show cause. Judges routinely sign domestic relations commissioners' recommendations unless a party objects. In this case, Ms. Moon did not file an objection to the commissioner's recommendation dismissing the order to show cause, nor did she object to the suggestion that she file a petition to modify. Thus, as a matter of course, the judge signed an order adopting the commissioner's recommendation.[3]

---

1. In 1993, Mr. Moon paid Ms. Moon $2,400 per month plus $7,500 (thirty percent of his annual distributions from MST Trucking). In 1994, he paid her only $2,400 per month. In 1995, Mr. Moon paid Ms. Moon $2,400 per month plus $6,000 (thirty percent of his annual distributions from MST Trucking).

2. During the proceedings Mr. Moon verified his 1993 and 1994 annual income. The record does

not reveal that Mr. Moon verified his annual income for 1995 or 1996.

3. We note that, by statute, commissioners are incapable of entering a final judgment. *See* Utah Code Ann. § 78-3-31(1)(a) (1998) (stating "[c]ourt commissioners are quasi-judicial officers of courts of record and have limited judicial authority"); *Holm v. Smilowitz*, 840 P.2d 157, 167 (Utah Ct.App.1992) (noting commissioners

¶ 14 Before the court entered that order, Ms. Moon filed a Petition for Modification seeking to "enforce" the decree. No appeal was filed or pending from the order to show cause when the trial court also considered the petition to modify. Given these facts, the equitable nature of divorce proceedings, and the court's continuing jurisdiction in divorce cases, there was no reversible error in the trial court's consideration of the order to show cause along with the petition to modify. *See* Utah Code Ann. § 30–3–5(3) (1998) (establishing court's continuing jurisdiction); *Gillmor v. Wright,* 850 P.2d 431, 439 (Utah 1993) (Orme, J., concurring) (noting that law of the case doctrine does not prevent court from "catching a mistake and fixing it").

¶ 15 Thus, the trial court was free to reconsider the commissioner's recommendation in light of the evidence presented at trial, and disregard, alter, or adopt the commissioner's recommendation, as it saw fit.

## II. ALIMONY

¶ 16 Mr. Moon argues the trial court erred in ordering him to pay Ms. Moon as alimony $2,400 per month plus thirty percent of any income he receives from MST Trucking over $150,000 per year. He contends that under the decree he must pay Ms. Moon only $2,400 per month plus thirty percent of any "bonus" he receives from MST Trucking. Because part of his MST Trucking annual income is now called "distributions" rather than "bonuses," he argues that he must pay only $2,400 per month. Mr. Moon also argues that he must verify his income only if he receives "bonus" income.

¶ 17 Ms. Moon responds that the parties intended Mr. Moon to pay $2,400 per month, plus thirty percent of his income over $150,000 per year, for a total annual alimony payment of $58,800. She further argues that Mr. Moon must verify his income each year regardless of whether he considers any annual alimony payments to be owed.

"are authorized to exercise certain functions to assist the judiciary in the exercise of its judicial power," but "have no authority to exercise ultimate judicial power"); Utah Code Jud. Admin.

### A. Order to Show Cause/Construing the Decree

¶ 18 The parties and the trial court essentially treated this case as presenting a question of the proper construction of the original divorce decree, which was ambiguous as to the meaning of the term "bonus," an approach with which we agree. "We interpret a divorce decree according to established rules of contract interpretation.... 'When determining whether a contract is ambiguous, any relevant evidence must be considered.'" *Taylor v. Hansen,* 958 P.2d 923, 928 (Utah Ct.App.1998) (quoting *Ward v. Intermountain Farmers Ass'n,* 907 P.2d 264, 268 (Utah 1995)). We must also " 'consider the writing in light of the surrounding circumstances.'" *Id.* (quoting *Ward,* 907 P.2d at 268).

¶ 19 Mr. Moon argues for a literal reading of the word "bonus" in the original divorce decree, while Ms. Moon contends that "bonus" was meant to cover any income from MST Trucking above Mr. Moon's base salary of $150,000 per year. " 'Language in a written document is ambiguous if the words may be understood to support two or more plausible meanings.' ... [W]hether a contract is ambiguous is a question of law, which we review for correctness." *Id.*

¶ 20 The trial court indicated that it found the language of the decree unambiguous. However, the trial court then proceeded to treat the decree as ambiguous. *See, e.g., Lyngle v. Lyngle,* 831 P.2d 1027, 1029 (Utah Ct.App.1992) (noting that "the trial court, *by its treatment of the matter,* concluded the language of the divorce decree was ambiguous" (emphasis added)). The trial court overruled two parol evidence objections and received and considered extrinsic oral and documentary evidence submitted by both parties regarding their intent at the time the decree was entered.

¶ 21 After considering the disputed evidence presented by both parties, the trial court made and entered findings of fact and conclusions of law construing the decree.

R6–401(6) (stating "[c]ommissioners shall not make final adjudications of domestic relations matters").

The trial court entered the following findings:

[1] [Mr. Moon] had an income of $250,-000.00 per year.

[2] If he was receiving part of that income as bonus annually and not monthly, it would work a considerable hardship on [him].

[3] The separation between salary and bonuses and the annualized payment was done for the benefit of [Mr. Moon].

[4] He would not have sufficient income to care for and support himself if he had to pay alimony each month on his total annual income of $250,000.00.

[5] Payment of alimony was structured so that [Mr. Moon] would pay on an annual basis when he received that part of his income as a bonus.

[6] Regardless of how you look at payment of his income, [Mr. Moon] was going to be paying alimony on his total income of $250,000.00 a year . . . .

[7] Despite the change in the structure of how [Mr. Moon's] income is paid to [him by MST Trucking], the meaning of the Divorce Decree and the Findings of Fact and Conclusions of Law have not changed.

¶ 22 Based on these findings, the trial court construed the original meaning of the decree to be that:[4]

[1] [T]he definition of income shall include

[a] salary and

[b] bonuses received from MST Trucking Company, and

[c] any annual increase that [Mr. Moon] receives over $150,000.00 shall be subject to the (30%) distribution to [Ms. Moon] as alimony regardless of whether or not [Mr. Moon] chooses to actually receive the money or to leave it in the corporation.

[2] Any sums allocated to [Mr. Moon by MST Trucking] as income shall still be calculated as part of [his] alimony obligation to [Ms. Moon].

[3] [Ms. Moon] shall be entitled to (30%) of that income if [Mr. Moon's] income [from MST Trucking] is over $150,000.00 for any annual period.

¶ 23 The foregoing findings and conclusions set forth the court's determination that the original decree requires the ongoing alimony calculations to include *all* sums allocated to Mr. Moon by MST Trucking. These findings and conclusions and the order support enforcement of alimony payments, as requested by Ms. Moon in her order to show cause, until and unless the decree is modified.[5]

■ ¶ 24 The main thrust of Mr. Moon's brief is that the trial court should have treated this case solely as a petition to modify and not as an order to show cause.[6] Clearly, Mr. Moon desires this outcome to avoid retroactive payment of alimony. However, in his zeal to focus on and argue the facts of the modification issue, Mr. Moon has neglected a

---

**4.** Although these conclusions were drawn in the "Findings" section of the court's order, they are more in the nature of conclusions of law than findings of fact. *See Gillmor v. Wright*, 850 P.2d 431, 433 (Utah 1993) (noting that "[o]n appeal, we disregard the labels attached to findings and conclusions and look to the substance"); *Ostler v. Ostler*, 789 P.2d 713, 716 (Utah Ct.App.1990) (same).

**5.** As discussed below in point IIB, any modification of the decree affecting prospective payments of alimony awaits further consideration and action by the court. The court made and entered a threshold finding of a material change in the parties' circumstances, but the court failed to make any findings or order, orally or in writing, regarding whether any modification is justified.

**6.** Mr. Moon's brief and oral argument to this court also devoted substantial energy to his as-

sertion that the trial court erred when it considered his income distributions from MST Trucking (reported on his K–1) as "income" for alimony purposes. Regarding our treatment of the trial court's consideration of the decree, Mr. Moon's own argument highlights the issue's irrelevance. That is, the reorganization of MST Trucking's corporate structure and later distributions to Mr. Moon took place *after* the original decree of divorce was entered. Thus, these events shed no light on the parties' intentions at the time the court signed the decree of divorce, and they are immaterial to our consideration of the order to show cause and the meaning of the decree. However, Mr. Moon's argument could be relevant should the trial court consider a future modification of the decree. *See infra* n. 8.

critical requirement of appellate advocacy: the duty to marshal the evidence when challenging the trial court's findings of fact. While it is true that Mr. Moon gave some citations to the record, this is not all that is required.

> The marshaling process is not unlike becoming the devil's advocate. Counsel must extricate himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which supports the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous.

*West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991). When an appellant fails to meet the "'heavy burden'" of marshaling the evidence, *id.* (citation omitted), we "'assume[ ] that the record supports the findings of the trial court,'" *Wade v. Stangl*, 869 P.2d 9, 12 (Utah Ct.App.1994) (quoting *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991)). Here, Mr. Moon simply re-argued his own evidence. Accordingly, because Mr. Moon has failed to marshal the evidence supporting the trial court's findings and then to show that the findings are unsupported, we affirm the trial court's construction of the ambiguous alimony provisions of the divorce decree.

¶ 25 However, the trial court did not finish the work required by the order to show cause—that is, entry of a judgment for past-due alimony. After the hearing, the trial court ruled from the bench that Ms. Moon was "entitled to enforcement of the order to show cause," and stated that "she's entitled to verification [of income] for '93,- '94, '95, '96 and of course we're into '97."[7] The court also stated, "Now, I'm not going to go through each year [regarding past-due alimony]; you have that material. If you can't work it out, then of course I have my notes here." The court also ordered interest on all past due amounts.

¶ 26 The trial court entered findings, conclusions, and an order describing the necessary computations. However, the order was incomplete because the parties did not "work it out"—that is, compute the amounts of alimony past due—nor did they ask the court to determine the amounts due. The record does not show that Mr. Moon supplied the required verification of income. Thus, the court's order failed to enter judgment for the amounts of delinquent alimony owed for the years 1994 to 1997, with interest. Accordingly, we remand to the trial court for the ministerial purpose of computing the past-due alimony consistent with this opinion, and entering a judgment for delinquent alimony.

### B. Petition to Modify

¶ 27 Although the trial court found that Ms. Moon's action was properly before the court as an order to show cause, the court also considered her petition to modify. As a threshold issue, before modifying an alimony award, the court must find "a substantial material change in circumstances not foreseeable at the time of the [parties'] divorce." Utah Code Ann. § 30-3-5(7)(g)(i) (1998); *see Throckmorton v. Throckmorton*, 767 P.2d 121, 124 (Utah Ct.App.1988). Here, the trial court concluded that the change in MST Trucking's corporate structure, the elimination of Mr. Moon's bonus payments, and the resulting decrease in payments to Ms. Moon were not foreseeable at the time the decree was entered and together were a substantial, material change of circumstances.

¶ 28 "'The determination of the trial court that there [has or has not] been a substantial change of circumstances ... is presumed valid,'" and we review the ruling under an abuse of discretion standard. *Wilde v. Wilde*, 969 P.2d 438 (1998) (alteration in original) (quoting *Wells v. Wells*, 871

7. During the proceedings Mr. Moon provided some verification of his 1993 and 1994 annual income. The record does not reveal any verification of Mr. Moon's annual income for 1995 or 1996. The matter was tried to the court on May 29, 1997.

P.2d 1036, 1038 (Utah Ct.App.1994)). Mr. Moon has not challenged this ruling. Further, our review of the record shows the ruling is supported by the evidence; we thus conclude the trial court did not abuse its discretion.

¶ 29 However, we agree with Mr. Moon that the court failed to complete the necessary analysis of the modification issue. Once it has concluded there has been a substantial material change of circumstances justifying modification, the court must

> then consider the three factors set out in *Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985), to support a modification of an alimony award. The *Jones* factors are:
>
> "[1] the financial conditions and needs of the [recipient spouse];
>
> [2] the ability of the [recipient spouse] to produce a sufficient income for [him- or] herself; and
>
> [3] the ability of the [payor spouse] to provide support." [8]

*Wells,* 871 P.2d at 1040 n. 4 (citation omitted) (quoting *Jones,* 700 P.2d at 1075). After the court has considered the *Jones* factors, it must then enter findings of fact.[9] *See Breinholt v. Breinholt,* 905 P.2d 877, 880 (Utah Ct.App.1995); *Throckmorton,* 767 P.2d at 124.

¶ 30 Here, the trial court did not complete the modification analysis by considering the *Jones* factors. Because Mr. Moon never verified his income, as required by the decree, and because of the posturing of both parties vis-a-vis the order to show cause/petition for modification, evidence in support of the respective *Jones* factors is deficient. Moreover, the parties' circumstances regarding these factors may have changed during this appeal. Accordingly, further evidence will be needed for the trial court to complete its analysis. On remand, the trial court, under its continuing jurisdiction, should hear evidence concerning each of the *Jones* factors and enter findings.[10] Thus, the parties will

---

8. When evaluating a payor spouse's ability to provide support, our courts have considered a number of factors. The first is evaluating the payor spouse's "needs and expenditures, such as housing, payment of debts, and other living expenses." *Baker v. Baker,* 866 P.2d 540, 547 (Utah Ct.App.1993). When the payor spouse is self-employed, our courts have considered whether any of the payor's personal expenses are paid by the business. *See Breinholt v. Breinholt,* 905 P.2d 877, 880 (Utah Ct.App.1995).

When determining the payor spouse's income, the court should consider more than just the payor's salary. Indeed, " 'it is appropriate and necessary for a trial court to consider *all* sources of income that were used by the parties during their marriage to meet their self-defined needs, from whatever source—overtime, second job, self-employment, etc., as well as unearned income.' " *Breinholt,* 905 P.2d at 880 (quoting *Crompton v. Crompton,* 888 P.2d 686, 690 (Utah Ct.App.1994)) (emphasis added and omitted). Retirement income may also be considered. *See Throckmorton v. Throckmorton,* 767 P.2d 121, 125 (Utah Ct.App.1988). When the payor spouse is self-employed, our courts have considered all income produced by the business, whether or not that income is taken as salary. *See Jones v. Jones,* 700 P.2d 1072, 1076 (Utah 1985) (noting "[i]f [the capital needs of the business] are a result of discretionary decisions of the husband to expand and improve the business, rather than to maintain it in its present condition, then to permit him to divert income into the business at the expense of his ex-spouse's support needs

would be to permit him to enrich himself at her expense").

Our courts have also looked to a payor spouse's historical earnings, *see Olson v. Olson,* 704 P.2d 564, 566 (Utah 1985), and have imputed income to an unemployed or underemployed spouse once the court has determined that the former spouse "is voluntarily unemployed or underemployed," *Cox v. Cox,* 877 P.2d 1262, 1267 (Utah Ct.App.1994) (quoting *Hall v. Hall,* 858 P.2d 1018, 1024 (Utah Ct.App.1993)) (emphasis omitted).

Finally, our courts have also considered the payor spouse's age and physical disability, *see id.* at 1268; the income of the payor spouse's current spouse and the joint expenses of the payor and his or her present spouse, *see Paffel v. Paffel,* 732 P.2d 96, 101–02 (Utah 1986); and responsibility for marital debts such as mortgages, *see Willey v. Willey,* 866 P.2d 547, 552 (Utah Ct.App. 1993).

9. As noted in section IIA, the only findings and conclusions and order made by the trial court were in support of its construction of the original decree, and did not relate to the petition for modification.

10. Business and personal accounting records, bank records, and tax returns are useful sources of information. For example, IRS form 1040 lists several sources of income: wages, salary, interest, capital gains, rents, royalties, partnerships, S corporations, etc., all of which should be carefully scrutinized by trial courts. *See Breinholt,* 905 P.2d at 880 (stating that trial court

both be apprised of their prospective duties and obligations.

## III. ATTORNEY FEES

¶ 31 Finally, Mr. Moon appeals the trial court's award of attorney fees to Ms. Moon. " '[T]he decision to award attorney fees [in a divorce action is] within the sound discretion of the trial court.' " *Whitehead v. Whitehead*, 836 P.2d 814, 817 (Utah Ct.App. 1992) (first alteration in original) (quoting *Crouse v. Crouse*, 817 P.2d 836, 840 (Utah Ct.App.1991)); *accord* Utah Code Ann. § 30–3-3 (1998).

¶ 32 Mr. Moon assigns error to the trial court on several counts: he asserts that no statute authorizes attorney fees to a party seeking to modify a divorce decree, and further that the trial court failed to consider the needs and abilities of each spouse and the reasonableness of the attorney fees. Our analysis of the attorney fee issue differs for the order to show cause and the petition for modification.

¶ 33 As to the order to show cause, Mr. Moon "fails to comprehend the nature of these proceedings.... In an action to enforce the provisions of a divorce decree, an award of attorney fees is based solely upon the trial court's discretion, regardless of the financial need of the moving party." *Lyngle v. Lyngle*, 831 P.2d 1027, 1030 (Utah Ct.App.1992); *see also* Utah Code Ann. § 30–3-3 (1998) (providing that "[i]n any action to enforce an order of . . . alimony . . . the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense"). We see no abuse of discretion in the trial court's decision to award attorney fees to Ms. Moon. Thus, we affirm the award. Because Ms. Moon was awarded attorney fees below for her efforts to enforce the decree through the order to show cause, and because on appeal she prevailed on this issue, we also award attorney fees to Ms. Moon on appeal. *See Lyngle*, 831 P.2d at 1031. Ac-

cordingly, we "remand for entry of reasonable fees" incurred on this portion of the appeal. *Id.*

¶ 34 Because we remand for further proceedings on the petition for modification, the determination of which party prevails awaits the outcome of trial below. Thus, it would be premature to act on this portion of the attorney fees issue. On remand, the trial court should consider the usual factors when deciding whether to award attorney fees to either party as they pertain to the petition for modification. *See Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct.App.1998). We thus award attorney fees to Ms. Moon on the appeal of this issue if she prevails and if need for attorney fees is established upon remand. *See Asper v. Asper*, 753 P.2d 978, 982 (Utah Ct.App.1988).

## CONCLUSION

¶ 35 The trial court did not err when it considered both the order to show cause and the petition to modify.

¶ 36 *Order to Show Cause:* We affirm the trial court's order construing the original divorce decree as requiring Mr. Moon to pay $2,400 per month plus thirty percent of any income allocated to him by MST Trucking over $150,000. We do so because Mr. Moon failed to marshal the evidence supporting the court's construction of the decree. We also affirm the order requiring Mr. Moon to provide Ms. Moon with verification of his annual income. Because the trial court failed to calculate and enter a judgment amount for past due alimony, we remand for that ministerial purpose and for entry of judgment consistent with this opinion.

¶ 37 *Petition to Modify:* We affirm the trial court's conclusion that there has been a material change of circumstances. We remand for the trial court to consider the *Jones* factors, including additional evidence as needed, and to enter appropriate findings, conclusions, and an order regarding modification.

should " 'consider all sources of income' " when calculating alimony award) (citation omitted).

Mr. Moon argues that his ability to provide support has diminished because he does not per-

sonally receive cash for the "ordinary income from trade or business activities" reported on line one of his Schedule K–1. The trial court should carefully attend to this item on remand.

**440**

¶ 38 Finally, the award of attorney fees to Ms. Moon in this action to enforce alimony was within the trial court's discretion. Because Ms. Moon was awarded attorney fees below and prevailed here, we also award them on appeal of the order to show cause. Because we remand for further proceedings on the petition to modify, we do not award fees on appeal for that issue at this time.

¶ 39 Affirmed in part and remanded for further proceedings consistent with this opinion.

¶ 40 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.

