2008 UT App 246

**Steven R. DAVIS, as trustee of the Eugene Davis and Zelma B. Davis Living Trust, Plaintiff and Appellee,**

v.

**Russell E. YOUNG and Patricia Ann Zufelt, Defendants and Appellant.**

No. 20061057–CA.

Court of Appeals of Utah.

June 26, 2008.

Evan A. Schmutz and Andrew V. Wright, Provo, for Appellant.

Stephen K. Christiansen and Chandler P. Thompson, Salt Lake City; and Cleve J. Hatch, Roosevelt, for Appellee.

Before Judges THORNE, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶ 1 Russell E. Young appeals from the trial court's judgment setting aside a quitclaim deed purporting to transfer Eugene and Zelma B. Davis's farm to him from their trust, and quieting title to the farm in his uncle, Steven R. Davis, the successor trustee. We affirm.

¶ 2 In 1993, Eugene and Zelma Davis (the Davises) created the Eugene Davis and Zel-ma B. Davis Family Living Trust (the Trust), named themselves as trustees, and deeded their farm to themselves as trustees. With respect to the Davises' power to revoke the Trust, the Trust documents provide:

> 2.01 *Powers Reserved by Grantors.* (a) *Revocation.* While either grantor is living, the trust created by this instrument may be revoked, in whole or in part, by an instrument signed by Grantors, or the survivor of them, and delivered to the Trustees. Upon revocation, the Trustees shall promptly distribute to Grantors, or the survivor of them, all of the designated portion of the property comprising the trust estate.

At nearly the same time they executed the Trust documents, the Davises executed reciprocal durable powers of attorney naming each other as attorneys-in-fact and granting to the other "full power to do and perform all and every act that [each] may lawfully do ..., with full power of substitution and revocation."

¶ 3 The Trust documents provided that upon the death of both Davises, Steven would become the successor trustee, each of the Davises' grandchildren would receive $1000, and the remaining Trust assets would then be distributed to the Davises' children-one-third to Steven, one-third to Patricia Ann Zufelt, and one-sixth each to Rex E. and Fay Davis. The parties agree that the farm was the main asset held by the Trust.

¶ 4 On January 1, 2001, Eugene executed a quitclaim deed conveying the Davises' farm to his grandson, Appellant Russell E. Young, who had long lived on and worked the farm.[1] Zelma did not execute the deed at that time, nor did Eugene sign it on her behalf as her attorney-in-fact. The deed was apparently delivered to Young, but he did not then record it.

¶ 5 On March 12, 2003, Eugene died, leaving Zelma as the sole trustee under the terms of the Trust. Nine days later, she added her signature-or rather, an illegible

---

1. In 1993, the Davises had executed codicils to their wills that provided Young with a one-quarter interest in their residuary estate. In 1997, the Davises executed a joint codicil giving Young an additional $5000 cash gift "for the help caring for us." Though insightful as bearing on the favored status Young enjoyed, these facts are essentially irrelevant to our review of the issues surrounding the Trust.

mark-to the quitclaim deed. Young recorded the deed three days later. It is unclear whether anyone besides the Davises and Young knew about the quitclaim deed. Zelma died on October 16, 2005.

¶ 6 Not surprisingly, contention arose among members of the family regarding the proper disposition of the Davises' farm, with Young claiming it as his own by virtue of the quitclaim deed he had recorded. Ultimately, Steven filed suit to invalidate the purported transfer of the farm to Young and to quiet title to the farm in himself as successor trustee under the terms of the Trust. Young, of course, opposed the action.

¶ 7 After a three-day bench trial, the trial court entered its judgment, from which Young timely appealed, setting aside the quitclaim deed as void ab initio and quieting title to the Davises' farm in Steven as trustee. In connection with its order, the trial court made a number of oral findings, which are particularly relevant to our consideration of this appeal. *See generally* Utah R. Civ. P. 52(a) (allowing a trial court to enter oral findings).

¶ 8 First, the trial court recognized that under the common law of Utah, a settlor has power to modify or revoke a trust only to the extent the trust documents allow, and only in the particular manner or circumstances allowed by the documents' terms. *See Flake v. Flake*, 2003 UT 17, ¶ 13, 71 P.3d 589; Restatement (Second) of Trusts § 331 cmt. d (1959) ("If [a] settlor reserves a power to modify [a] trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances."). The trial court specifically found that execution of the quitclaim deed by the Davises was not consistent with the terms of the Trust and therefore did not effect a partial revocation of the Trust or a valid transfer of the Davises' farm out of the Trust. The court also held that, given the purposes for which the Trust was established, Eugene had no authority, either as trustee or as Zelma's attorney-in-fact, to transfer Trust property without consideration.

¶ 9 Second, the trial court held that the Utah Uniform Trust Code did not apply to this case because it was not enacted until 2004, *see* Utah Code Ann. § 75–7–605 (Supp. 2006) (as enacted by 2004 Utah Laws, ch. 89, § 70). These first two issues present legal questions, which we review for correctness. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 10 Third, the trial court specifically found that Eugene, in signing the quitclaim deed, did not act as Zelma's attorney-in-fact. Fourth, the trial court found that the Davises did not intend to give Young their farm without consideration. These two issues raise questions of fact that we review for clear error. *See id.* at 935–36.

¶ 11 Fifth, the trial court specifically found that the Davises and Young enjoyed a confidential relationship, and that because of that relationship there existed a presumption of undue influence on the part of Young. *See Webster v. Lehmer*, 742 P.2d 1203, 1206 (Utah 1987) ("If a confidential relationship is found, 'any transaction that benefits the party in whom trust is reposed is presumed to have been unfair and to have resulted from undue influence and fraud.' ") (citation omitted). The trial court further found that with respect to Eugene, the presumption was overcome, but with respect to Zelma, it was not. The trial court found that Zelma had suffered from mental deterioration for many years and "was not in a condition or state of mind to dispose of property . . . . [or] to sign th[e quitclaim] deed." These findings present mixed questions of fact and law, which we review for clear error and correctness, respectively, while granting the trial court some discretion in its application of the law to the facts. *See Wayment v. Howard*, 2006 UT 56, ¶ 9, 144 P.3d 1147.

¶ 12 The crux of Young's argument on appeal is this: Either the quitclaim deed, as an instrument signed by both Eugene and Zelma, served both to partially revoke the Trust and to convey the Davises' farm to him in accordance with their long-held wishes, or Eugene, acting alone, effected the same result by executing the deed himself. Both prongs of Young's argument stand or fall with the validity of the quitclaim deed and the answer to whether its execution consti-

tutes an effective revocation or transfer under the terms of the Trust.

¶ 13 We begin our analysis with the facts. Under our rules, a party challenging a factual finding "must first marshal all record evidence that supports the challenged finding." Utah R.App. P. 24(a)(9). "When an appellant fails to meet the heavy burden of marshaling the evidence, ... we assume[ ] that the record supports the findings of the trial court." *Moon v. Moon,* 1999 UT App 12, ¶ 24, 973 P.2d 431 (alteration in original) (citations and internal quotation marks omitted), *cert. denied,* 982 P.2d 89 (Utah 1999). The trial court specifically found that the Davises enjoyed a confidential relationship with Young. This is a finding of fact, *see Webster,* 742 P.2d at 1206, and Young has not effectively disputed it. Nor has he effectively disputed the trial court's related determination that Young failed to overcome the presumption that Zelma's execution of the quitclaim deed was based on undue influence compounded by her mental incapacity. Because Young has failed to successfully challenge these findings, we accept them as true. *See Moon,* 1999 UT App 12, ¶ 24, 973 P.2d 431. For the same reasons, we also accept as true the facts that Eugene did not sign the quitclaim deed on behalf of his wife as her attorney-in-fact and that the Davises did not intend to convey the farm to Young. *See id.*

¶ 14 We next proceed to consider the legal question that stands independently of these fact-driven issues. Young insists that the Utah Uniform Trust Code as enacted in 2004 applies. We need not definitively resolve this question because, in light of the trial court's factual findings, Young's argument fails under both the common law and the new code provisions.

¶ 15 Under Utah common law, a settlor has power to modify or revoke a trust only to the extent the trust documents permit, and only in the particular manner or circumstances identified as allowable under the terms of the trust documents. *See Flake v. Flake,* 2003 UT 17, ¶ 13, 71 P.3d 589; *Kline v. Utah Dep't of Health,* 776 P.2d 57, 61 (Utah Ct.App.1989); Restatement (Second) of Trusts § 331 cmt. d (1959). Under the Utah Uniform Trust Code, the settlor of a revocable·trust may modify or revoke it "by substantially complying with a method provided in the terms of the trust." Utah Code Ann. § 75–7–605(3)(a) (2006). The code also provides that "if the terms of the trust do not provide a method [of modification or revocation]," or if "the method provided in the terms [of the trust] is not expressly made exclusive," then the settlor may modify or revoke the trust by "(i) executing a later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or (ii) any other method manifesting clear and convincing evidence of the settlor's intent." *Id.* § 75–7–605(3)(b). Because the Davises did not devise the farm to Young by will or codicil, and because the trial court specifically found that their intent was not to convey the farm to Young, Young cannot satisfy either of these requirements. Thus, whether we apply the common law or the code, Young can prevail only if the quitclaim deed, signed by both of the Davises or solely by Eugene, complies— strictly under the common law or substantially under the code—with the terms of the Trust documents. We agree with the trial court that it does not.

¶ 16 Under the terms of the Trust, it could be revoked while both Eugene and Zelma were alive only "by an instrument signed by Grantors." By its own terms, then, revocation of the Trust required the execution of an appropriate instrument by *both* Eugene and Zelma. The trial court found, on the one hand, that Zelma lacked the mental capacity to execute the quitclaim deed, and on the other, that Young's undue influence otherwise invalidated the deed, at least insofar as Zelma's execution of it was concerned. It also found that Eugene did not sign the quitclaim deed as Zelma's attorney-in-fact. Given these findings, the quitclaim deed cannot satisfy the terms of the Trust, either strictly or substantially.

¶ 17 Finally, Young argues that under the code, Eugene's signature was itself sufficient to satisfy the terms of the Trust documents. In support of his argument, he relies

upon section 75–7–605(2)(a), which allows a revocable trust created or funded by more than one settlor to be revoked by either spouse acting alone to the extent the trust consists of community property. *See id.* § 75–7–605(2)(a). But subsection (2)(a) speaks only to the *authority* of a single spouse to revoke a trust, while subsection (3) speaks to the *method* by which the trust can be revoked. Were we to read subsection (2)(a) in isolation, as Young proposes, we would essentially ignore the related provisions of subsection (3), discussed above. The well-accepted rules of statutory construction require us to read the various parts of section 75–7–605 together. *See Lund v. Brown,* 2000 UT 75, ¶ 23, 11 P.3d 277. In doing so, we reject Young's characterization of subsection (2)(a) as untenable. Even if (1) the code applied, (2) the farm constituted community property, and (3) Eugene intended to act alone in revoking the Trust, Eugene's failure to even substantially comply with the terms of the Trust would be fatal to his attempted revocation.

¶ 18 Young also relies on the Trust's substitute trustee provisions to support his argument that Eugene's signature alone satisfies the terms of the Trust documents. Section 3.01 of the Trust provides: "If either of the [Davises] fail or cease to serve for any reasons, the other may serve alone." Again, this Trust provision speaks only to the *authority* of a trustee to act alone under certain circumstances. "A trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of beneficiaries." *Continental Bank & Trust Co. v. Country Club Mobile Estates, Ltd.,* 632 P.2d 869, 872 (Utah 1981) (citing Restatement (Second) of Trusts § 2 (1959)). In connection with those duties, "[t]he trustee has exclusive control of the trust property, *subject . . . to the limitations imposed by law [and] the trust instrument,* and 'once the settlor has created the trust he is no longer the owner of the trust property and has only such ability to deal with it as is expressly reserved to him in the trust instrument.' " *Flake,* 2003 UT 17, ¶ 12, 71 P.3d 589 (quoting *Continental Bank & Trust Co.,* 632 P.2d at 872) (emphasis added).

¶ 19 The Trust expressly provided a method for revoking the Trust, and Eugene, whether acting as grantor or trustee, was bound to follow it. He failed to do so. Accordingly, we affirm the decision of the trial court setting aside the quitclaim deed as void ab initio and quieting title to the Davises' farm in Steven, the successor trustee.

¶ 20 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and CAROLYN B. McHUGH, Judge.