2003 UT 6

**PINETREE ASSOCIATES d.b.a. Pinetree Condominiums, Plaintiff and Appellee,**

v.

**EPHRAIM CITY, a municipal corporation, Defendant and Appellant.**

No. 20010129.

Supreme Court of Utah.

March 14, 2003.

Wayne H. Braunberger, Sandy, for plaintiff.

Ken Chamberlain, Richard K. Chamberlain, Richfield, for defendant.

RUSSON, Justice:

¶ 1 This case involves a suit by Pinetree Associates d.b.a. Pinetree Condominiums ("Pinetree") to recover overcharges for water usage from Ephraim City, a Utah municipal corporation.

## BACKGROUND

¶ 2 Pinetree Condominiums consists of thirty condominium units ("condominiums") in one structure located in Ephraim City. The members of Pinetree are the owners of those thirty units.

¶ 3 Ephraim City maintains a public utility system that provides water and electricity to residents in dwelling units in Ephraim City, including the condominiums.

¶ 4 When the condominiums were built, only one culinary water line and one meter were installed to service all thirty units. According to the affidavit of Pinetree's general contractor, unidentified personnel from Ephraim City recommended to Pinetree that the best way to set up the condominium project was with one water line and one meter.

¶ 5 On or about June 19, 1991, Ephraim City adopted a new water rate resolution. That water rate resolution reads:

All water measured to the customer (dwelling unit, apartment, hotel, boarding house, trailer, commercial establishment, business, industry, school, church, etc.) shall be paid monthly at the minimum rate of $10.80 for the first seven thousand (7,000) gallons of water used per month.

Thereafter, all water shall be charged to the customer as follows:

$0.45 per 1,000 gallons used for the next 23,000 gallons; $0.60 per 1,000 gallons used for the next 70,000 gallons; all over 100,000 gallons at the rate of $0.70 per 1,000 gallons used.

¶ 6 After the passage of this water rate resolution, Ephraim City assessed Pinetree thirty separate minimum rate charges instead of one minimum rate charge for water measured through its one culinary water line and meter.

## PROCEDURAL HISTORY

¶ 7 On February 4, 1994, Pinetree filed the present suit against Ephraim City, alleging six causes of action and seeking, among other things, a refund of water payments it paid as a result of Ephraim City's change in assessment for water pursuant to the June 19 water rate resolution.

¶ 8 The trial court dismissed Pinetree's first two causes of action upon Ephraim City's motion to dismiss those claims. The parties then filed cross-motions for summary judgment on the remaining causes of action. The trial court granted Pinetree summary judgment on Pinetree's third and fifth causes of action. These causes of action asserted that Ephraim City's policy of water and electric rate charging violated the uni-

form operation of laws provision of the Utah Constitution. The trial court granted partial summary judgment on Pinetree's fourth and sixth causes of action. The decisions were "partial" only in that the trial court ordered an accounting by Ephraim City to determine the precise amount of the refund owed to Pinetree.

¶ 9 Ephraim City appeals the trial court's grant of summary judgment, arguing (1) that the trial court misinterpreted the June 19 water rate resolution (this interpretation is presumably the predicate to the trial court's conclusion that the policy violates the uniform operation of laws provision), and (2) that the affidavits supporting Pinetree's complaint and motion for summary judgment were deficient under rule 56(e) of the Utah Rules of Civil Procedure and therefore could not be relied upon by the trial court in granting summary judgment.[1]

¶ 10 On appeal, Pinetree argues that the trial court did not err as a matter of law in its interpretation of the Ephraim City water rate ordinance or in its conclusion that Ephraim City's application of the water rate ordinance violates the uniform operation of laws provision found in article I, section 24 of the Utah Constitution.

### STANDARD OF REVIEW

¶ 11 "A trial court may properly grant summary judgment when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 10, 54 P.3d 1139 (quoting Utah R. Civ. P. 56(c)); *see also Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 21, 48 P.3d 895. "The propriety of a trial court's grant of summary judgment is a question of law." *WebBank*, 2002 UT 88 at ¶ 10, 54 P.3d 1139. "In deciding whether summary judgment was appropriate, we need review only whether the trial court erred in applying the relevant law and whether a material fact was in dispute." *Id.* " 'We thus review the trial court's legal con-

clusions for correctness, according them no deference.' " *Id.* (citation omitted).

### ANALYSIS

### I. INTERPRETATION OF WATER RATE ORDINANCE

¶ 12 The primary issue presented on appeal in this case is whether "a single culinary water line carrying water into one structure encompassing 30 independent and distinguishable separately-owned condominium units preclude[s] cities (and towns) from assessing an independent monthly charge to each of the separate and individual self-contained ... condominium[s]." The resolution of this issue turns entirely upon the water rate ordinance enabling Ephraim City to assess charges for water usage and the method by which those charges are to be calculated. Here, Ephraim City passed a water rate resolution governing the very question presented. Ephraim City may only assess water usage charges consistent with its water rate ordinance. Therefore, our analysis involves interpretation of the governing water rate ordinance and review of whether Ephraim City acted in accordance with that ordinance in assessing water usage charges to Pinetree.

¶ 13 We interpret municipal and county ordinances and resolutions according to our well-settled rules of statutory interpretation and construction. *See Salt Lake City v. Roberts*, 2002 UT 30, 44 P.3d 767; *Durham v. Duchesne County*, 893 P.2d 581 (Utah 1995). "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *Blackner v. Dep't of Transp.*, 2002 UT 44, ¶ 12, 48 P.3d 949; *see also Dep't of Natural Res. v. Huntington–Cleveland Irrigation Co.*, 2002 UT 75, ¶ 13, 52 P.3d 1257.

¶ 14 The water rate resolution reads as follows:

All water measured to the customer (dwelling unit, apartment, hotel, boarding house,

---

1. These affidavits are relevant because they establish that certain personnel of Ephraim City advised Pinetree's general contractor to set up the condominium project with only one water line and meter. The trial court relied on this fact in part in its ruling on summary judgment.

trailer, commercial establishment, business, industry, school, church, etc.) shall be paid monthly at the minimum rate of $10.80 for the first seven thousand (7,000) gallons of water used per month.

Thereafter, all water shall be charged to the customer as follows:

$0.45 per 1,000 gallons used for the next 23,000 gallons; $0.60 per 1,000 gallons used for the next 70,000 gallons; all over 100,000 gallons at the rate of $0.70 per 1,000 gallons used.

¶ 15 The relevant portion of the water rate resolution unambiguously provides that a minimum monthly rate of $10.80 shall be assessed for the first 7,000 gallons of water used per month *measured* to the customer.

¶ 16 In this case, Ephraim City sent Pinetree one water bill assessing charges for water actually measured through the single water line and meter installed at the condominium complex. In addition, Ephraim City sent thirty separate bills to each of the thirty condominium units assessing the minimum monthly water usage charge of $10.80. These thirty separate bills showed only the minimum monthly charge and not any specific charges for water used by the individual units.[2] Only the primary bill for water and sewer services sent to Pinetree showed the actual water usage as recorded by the water meter. Under these circumstances, the billed customer is Pinetree and the measure of water to it as a water customer is determined by the sole water meter installed on the single culinary water line servicing the entire condominium building. According to the plain language of the water rate resolution, Ephraim City may not assess thirty separate minimum monthly charges to the individual condominium units, as it did, because water is not "measured," that is, run through a measuring device such as a meter,

to each of those units. The water to the condominium units is measured to Pinetree through its one meter.

¶ 17 Therefore, the trial court did not err as a matter of law in its interpretation of the Ephraim City water rate resolution. Nor did the trial court err as a matter of law in its subsequent conclusion, based on that interpretation of the water rate resolution, that Ephraim City did "not uniformly apply[ ] its water rate resolution because it bill[ed] [Pinetree] as if thirty water meters were installed and measuring water, when in fact only one meter [was] installed and measuring water."[3]

## II. DEFECTS IN SUPPORTING AFFIDAVIT

¶ 18 Ephraim City also challenges on appeal the adequacy of the affidavit of Pinetree's general contractor, Robert Fitch, to support the trial court's finding that "[w]hen Pinetree was built, personnel from Ephraim City told the general contractor, Robert Fitch, that having one water meter was the best way to set up the project." Ephraim City's challenge is unavailing.

¶ 19 First, Ephraim City failed to preserve this issue for appeal by not challenging the affidavit before the trial court. Formal or evidentiary defects in an affidavit in support or opposition to a motion for summary judgment are waived in the absence of a motion to strike or other objection. *See D & L Supply v. Saurini,* 775 P.2d 420 (Utah 1989); *Pentecost v. Harward,* 699 P.2d 696, 699 (Utah 1985); *Fox v. Allstate Ins. Co.,* 22 Utah 2d 383, 453 P.2d 701 (1969).

¶ 20 Second, Ephraim City stipulated to the fact that certain of its personnel had informed Pinetree that its project should be set up with one water line and meter. In its order dated April 1, 1997, the trial court

---

2. Even though a bill was prepared and sent to each separate condominium unit for the minimum monthly water usage charge, Ephraim City mailed all thirty bills to one address at Pinetree (unit 13). These individual bills were not mailed to the individual condominium units or to the actual owners/occupants of the units.

3. We note that the trial court also correctly stated in its order that "[t]his decision reflect's [the

trial court's] opinion as to the application of current ordinances to the facts of this case. It has no effect whatsoever on [Ephraim City's] legislative power to enact new or different ordinances." Ephraim City may exercise its legislative power to amend its water rate resolution to account for water users such as Pinetree in the future.

noted that "there has been a stipulation that certain facts are not in dispute. The statement of those facts is found in Plaintiff's Memorandum in Support of Motion for Summary Judgment." The trial court then proceeded to restate all of those stipulated, undisputed facts. In particular, the trial court found that the parties had stipulated that "[w]hen Pinetree was built, personnel from Ephraim City told the general contractor, Robert Fitch [one of Pinetree's affiants], that having one water meter was the best way to set up the project."

¶ 21 For these two reasons, Ephraim City cannot challenge on appeal the sufficiency of the affidavit or attempt to create or demonstrate the existence of a genuine issue of material fact regarding the issue of whether Ephraim City authorized the condominium project to be built or to operate with only one water line and meter. Therefore, the trial court did not err in relying on the affidavits submitted in support of Pinetree's motion for summary judgment to the extent that it did so in reaching its legal conclusions in this case.

## CONCLUSION

¶ 22 The trial court did not err in its interpretation of the Ephraim City water rate resolution or in its conclusion based on that interpretation that Ephraim City had improperly applied the water rate resolution to Pinetree by assessing it thirty separate minimum monthly water usage charges. Finally, the trial court properly relied upon the affidavits submitted by Pinetree in support of its motion for summary judgment because Ephraim City failed to object to the adequacy of the affidavits before the trial court and because the facts contained in the allegedly suspect affidavit were stipulated to by the parties. Therefore, the trial court's decision is affirmed.

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Judge GREENWOOD concur in Justice RUSSON's opinion.

¶ 24 Justice HOWE did not participate herein; Court of Appeals Judge PAMELA GREENWOOD sat.