2007 UT App 377

**Jerald F. JENSEN, Petitioner and Appellant,**

v.

**LuJean JENSEN, Respondent and Appellee.**

**No. 20060633–CA.**

Court of Appeals of Utah.

Nov. 23, 2007.

Brian G. Cannell and Lyle W. Hillyard, Logan, for Appellant.

Ronald W. Perkins, Ogden, for Appellee.

Before BENCH, P.J., DAVIS, and McHUGH, JJ.

## MEMORANDUM DECISION

McHUGH, Judge:

¶ 1 Jerald F. Jensen (Husband) appeals the trial court's Memorandum Decision and Order reducing LuJean Jensen's (Wife) alimony from $2150[1] to $1500 per month. Husband argues that the trial court erred (1) by not finding that Wife had cohabitated, (2) by ordering Husband to continue to pay alimony "after the source of income used for alimony at the trial terminated," and (3) by failing to require Wife to prove her inability to work. We affirm.

¶ 2 First, we review the trial court's finding that Wife did not cohabitate with Robert Andrews. Whether cohabitation exists "is a mixed question of fact and law. While we defer to the trial court's factual findings unless they are shown to be clearly erroneous, we review its ultimate conclusion for correctness." *Pendleton v. Pendleton*, 918 P.2d 159, 160 (Utah Ct.App.1996) (citing

---

1. In addition to the $2150 per month, Wife's alimony also included one-half of the net proceeds from rental income generated by a farm awarded to Husband in the property settlement.

*Haddow v. Haddow,* 707 P.2d 669, 671 (Utah 1985)). Although Wife lived in the same residence as Mr. Andrews off and on for two months, sharing a bedroom with Mr. Andrews's sister, the arrangement did not rise to the level of cohabitation. Cohabitation exists when a "former spouse is residing with a person of the opposite sex and engaging in sexual contact with that person." *Sigg v. Sigg,* 905 P.2d 908, 917 (Utah Ct.App.1995). Within the cohabitation context, common residency is defined as " 'the sharing of a common abode that both parties consider their principal domicile for more than a temporary or brief period of time.' It implies continuity, not simply a habit of visiting or a sojourn." *Pendleton,* 918 P.2d at 160 (quoting *Haddow,* 707 P.2d at 672).

¶ 3 The evidence does not indicate that Wife shared living or food expenses with Mr. Andrews, had open access to the Andrewses' home, or that she and Mr. Andrews "lived as though they were husband and wife." *Sigg,* 905 P.2d at 918 (determining that there was substantial evidence of cohabitation when above factors, among others, were met). Further, Wife did not have a key to the Andrewses' home, had only some of her clothing and toiletries with her during her stay, and maintained her Brigham City, Utah home to which she returned repeatedly during the two months she stayed with the Andrewses. As such, Wife's living arrangement in the Andrewses' home does not rise to the level of "common residency," as required for cohabitation. *See Haddow,* 707 P.2d at 673–74 (stating that cohabitation did not exist under similar factors). We therefore affirm the trial court's finding that Wife did not cohabitate with Mr. Andrews.[2]

■ ¶ 4 Next, we consider the trial court's modification of alimony, which we review "for abuse of discretion. 'We will not disturb the trial court's alimony award so long as the trial court exercises its discretion within the standards set by the appellate courts.' " *Bakanowski v. Bakanowski,* 2003 UT App 357, ¶ 7, 80 P.3d 153 (quoting *Haumont v. Haumont,* 793 P.2d 421, 423 (Utah Ct.App.1990)). "Three factors ... must always be considered[ ] before awarding alimony: (1) the financial needs and condition of the recipient spouse; (2) the ability of the recipient spouse to provide a sufficient income for himself or herself; and (3) the ability of the payor spouse to provide support." *Id.* ¶ 8. These are often referred to as the *"Jones* factors" because they were adopted by the Utah Supreme Court in *Jones v. Jones,* 700 P.2d 1072, 1075 (Utah 1985). The trial court may reduce an award of alimony if it is " 'persuaded that [the recipient spouse] will be able to support herself at a standard of living to which she was accustomed during the parties' marriage, or that [the payor spouse] is no longer able to pay.' " *Bridenbaugh v. Bridenbaugh,* 786 P.2d 241, 242 (Utah Ct.App.1990) (quoting *Fullmer v. Fullmer,* 761 P.2d 942, 951 (Utah Ct.App. 1988)).

¶ 5 The trial court concluded that Wife's needs "far exceed her income of $676" and that she is "unable to work." In contrast, the trial court determined that Husband's needs are exceeded "by more than $1,000[ ] without even taking into consideration his abilities to draw out of his IRA account and other savings and resources from the sale of property."

■ ¶ 6 Husband challenges the trial court's finding regarding Wife's inability to work. We will reverse the trial court only for "a clear abuse of discretion," and will not disturb the trial court's ruling as long as "specific findings on the ... condition of the recipient spouse" have been made. *Bakanowski,* 2003 UT App 357, ¶ 10, 80 P.3d 153 (internal quotation marks omitted). Additionally, the "party seeking modification of a prior alimony award bears the burden of establishing that a substantial change of circumstances has occurred which justifies modification." *Bridenbaugh,* 786 P.2d at 242.

¶ 7 The trial court determined, from Wife's unrebutted testimony, "that she is in worse physical health now than she was in 1997 when the [c]ourt originally found her unable

---

2. Because Husband failed to provide sufficient evidence to support the common residency requirement of cohabitation for purposes of alimony modification, we also uphold the trial court's decision not to address the sexual contact aspect of cohabitation.

to work."[3] Husband failed to meet his burden of proof because he did not offer any evidence to refute this testimony. Thus, Husband did not prove a "substantial change of circumstances" that justified modification of Wife's alimony award based on her current ability to work. *See id.* The trial court found that Wife is still unable to work, relying upon her uncontested testimony. We will not disturb this finding.

¶ 8 Finally, Husband claims that alimony should be eliminated because the only source from which it can be paid is Husband's separate property. Now that Husband has retired, his only income is derived from his half of the retirement account that was awarded to him in the initial decree. Husband argues that he now must give Wife an additional portion of the retirement account, despite the fact that she previously received one-half of it in the property settlement. We are not persuaded by Husband's argument.

¶ 9 Husband has confused the property settlement with the related but distinct issue of the alimony award. Husband and Wife were each awarded one-half of the retirement account at the time of the divorce as part of the property settlement. In addition, after considering the *Jones* factors discussed above, the trial court awarded alimony in favor of Wife. *See Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). "[T]he primary purpose of a property division, in conjunction with an alimony award, is to achieve a fair, just, and equitable result between the parties." *Riley v. Riley*, 2006 UT App 214, ¶ 27, 138 P.3d 84 (internal quotation marks omitted). The trial court, however, engages in a different analysis to make a property settlement than is used to determine whether alimony should be awarded. While the property settlement is an attempt "to allocate the property in a manner which best serves the needs of the parties and best permits them to pursue their separate lives," *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987), " '[t]he most important function of alimony is to provide support for the [recipient spouse] as nearly as possible at the standard of living ... enjoyed during marriage, and to prevent the [recipient spouse] from becoming a public charge,'" *Jones*, 700 P.2d at 1075 (internal quotation marks omitted).

¶ 10 If Husband's argument were taken to its logical extreme, the payor spouse could eliminate alimony by choosing not to earn income from his or her current efforts, relying instead on *income* generated from the payor spouse's separate property. Indeed, under Husband's theory, the retirement of the payor spouse, if occurring after a property settlement that divided the subject retirement account between the spouses, would always result in the termination of alimony. Both this court and the Utah Supreme Court have issued decisions that suggest a contrary result.

■ ¶ 11 In *Dogu v. Dogu*, 652 P.2d 1308 (Utah 1982), Mrs. Dogu challenged both the property settlement and alimony award entered by the district court. *See id.* at 1309. In particular, Mrs. Dogu argued that she should have been awarded part of Mr. Dogu's retirement account. *See id.* The Utah Supreme Court remanded to the trial court so that it could consider the retirement account "in its determination of an equitable property division between the parties." *See id.* at 1310. For purposes of aiding the trial court on remand, the *Dogu* court elaborated "on considerations appropriate to the division of marital property in retirement funds where, as in this case, that subject is inextricably involved with the court's award of alimony." *Id.* In doing so, the supreme court impliedly approved the use of Mr. Dogu's separately-owned retirement account as a source of alimony payments:

> [Mr. Dogu] argues that even if his retirement funds are considered a marital asset, *the district court made a fair and equitable decision to award him the entire $86,730 as a res from which he would pay*

---

**3.** The trial court found that Wife's medical symptoms include

> short-term and long-term memory loss, change of personality, fibromyalgia, headaches, circulation problems, anxiety, paranoia, hip and knee joint problems, weak lungs, bowel prob-

lems, sciatic nerve problems, ringing in her ears, light sensitivity with headaches (both muscle and migraine), nasal and breathing difficulties, stiffness in her muscles causing her to fall down on occasion, aching hands, and insomnia.

*the $750–per–month alimony* to [Mrs. Dogu] after his retirement. If the decree had been drawn so that this marital asset would assure the payment of alimony in all events, *it would be well within the bounds of discretion on the facts of this case.* *Id.* (emphasis added). The *Dogu* Court remanded, in part, because the divorce decree failed to address the issues related to Mrs. Dogu's interest in the retirement funds upon the death of Mr. Dogu. *See id.* Nowhere, however, does the supreme court suggest that it would be an abuse of discretion to award alimony to Mrs. Dogu with the expectation that it be paid from the retirement account awarded solely to Mr. Dogu. Likewise, the trial court here appropriately considered all sources of income available to Husband in determining if, and to what extent, alimony should be adjusted.[4]

¶ 12 In *Throckmorton v. Throckmorton,* 767 P.2d 121 (Utah Ct.App.1988), this court considered a similar issue. Mrs. Throckmorton brought a motion to modify a preexisting divorce decree, seeking (1) one-half of Mr. Throckmorton's retirement account, which the trial court had failed to consider in making the property settlement in the original decree; and (2) an increase in alimony. *See id.* at 122. We refused to reopen the property settlement under the doctrine of res judicata, indicating that an adjustment to the alimony award "appears to be a more appropriate method for dealing with [Mr. Throckmorton's retirement account]" than a challenge to the property settlement that left the entire retirement account with Mr. Throckmorton. *Id.* at 124 n. 1. In considering whether the trial court had abused its discretion by increasing the alimony award, we noted that "Mr. Throckmorton is able to provide support *due to his annual retirement income* of $18,900." *Id.* at 125 (empha-

sis added). Because the property award was not disturbed, the retirement account at issue remained the separate property of Mr. Throckmorton. Nevertheless, that *income* was deemed a proper consideration in determining Mr. Throckmorton's ability to pay. *See also Mortensen v. Mortensen,* 760 P.2d 304, 308 (Utah 1988) ("The fact that one spouse has inherited or donated property, particularly if it is income-producing, may properly be considered as eliminating or reducing the need for alimony by that spouse *or as a source of income for the payment of child support or alimony (where awarded) by that spouse.*" (emphasis added)); *Sampinos v. Sampinos,* 750 P.2d 615, 618–19 (Utah Ct.App.1988) (concluding that trial court did not exceed its discretion where alimony was to be paid from revenue generated by payor spouse's separate property).

¶ 13 The trial court was correct in concluding that Wife did not cohabitate with Mr. Andrews. Because the trial court made specific findings that Wife continues to have a need and is unable to earn, and that Husband has the ability to pay alimony, we will not disturb the trial court's decision to reduce the alimony award to $1500, rather than completely eliminating it as requested by Husband.

¶ 14 Affirmed.

¶ 15 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

¶ 16 I CONCUR IN THE RESULT: JAMES Z. DAVIS, Judge.

---

4. In determining whether a change in circumstances justifies a modification of the alimony award, the trial court must again apply the *Jones* factors. *See, e.g., Moon v. Moon,* 1999 UT App 12, ¶ 29, 973 P.2d 431; *Wells v. Wells,* 871 P.2d 1036, 1040 & n. 4 (Utah Ct.App.1994). When determining a payor spouse's ability to pay, "it is appropriate and necessary for a trial court to consider *all* sources of income." *Moon,* 1999 UT App 12, ¶ 29 n. 8, 973 P.2d 431 (internal quotation marks omitted).