**2015 UT App 54**

## THE UTAH COURT OF APPEALS

SETTLERS LANDING, LLC,
Plaintiff and Appellant,
*v.*
WEST HAVEN SPECIAL SERVICE DISTRICT,
Defendant and Appellee.

Opinion
No. 20130331-CA
Filed March 5, 2015

Second District Court, Ogden Department
The Honorable Mark R. DeCaria
No. 100904528

Dennis K. Poole, Attorney for Appellant

Kenneth D. Bradshaw and Jason M. Yancey,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE JAMES Z. DAVIS and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

CHRISTIANSEN, Judge:

¶1     Settlers Landing, LLC (Settlers) appeals from the trial
court's dismissal of Settlers' complaint challenging the fee
structure implemented by the West Haven Special Service District
(the District) for sanitary-sewer collection services. We affirm.

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

BACKGROUND

¶2    The District is a political subdivision located in Weber County. The District was established by the city council of West Haven City to maintain a public utility system that "provide[s] for and manage[s] the delivery of waste water and sewerage services."[2] Under standards promulgated and required by the State of Utah, the District designed and constructed a sanitary sewer collection system. The District provides, for a fee, culinary-water and sewer services to Settlers Landing Apartments, a 276-unit apartment complex operated by Settlers.

¶3    The District has implemented a billing method (the ERU fee structure) that assesses fees on the basis of an equivalent residential user (ERU). The ERU fee structure is based on "Addendum C," a document that forms part of the District's sewer-use and charging policies contained in the District's Sewer Use Ordinance (the Ordinance). Pursuant to Addendum C, a monthly user fee is calculated by taking the annual budget of the District and dividing that amount by the number of ERUs and then dividing the resulting figure by twelve. The ERU fee structure does not take into account actual use for each customer, nor does it make any distinction between residential dwelling type, the size of a residential dwelling, or the number of individual occupants. As a result, all residential users are assigned one ERU per household in determining their monthly fee amount. Pursuant to the Ordinance, the District considers each apartment as an individual residential unit or a single-family dwelling. Thus, the District charges Settlers one ERU for each apartment unit housed within Settlers Landing Apartments.

¶4    In March 2010, Settlers filed a claim under the Governmental Immunity Act with the District, arguing that its ERU fee structure resulted in discriminatory billing between

---

2. A public utility "includes every . . . water corporation[ and] sewerage corporation . . . where the service is performed for, or the commodity delivered to, the public generally." Utah Code Ann. § 54-2-1(16)(a) (LexisNexis 2010).

apartment owners and other small residential owners and those who maintain larger residential properties. When sixty days had passed without a response from the District, Settlers' claim was deemed denied. *See* Utah Code Ann. § 63G-7-403(1)(b) (LexisNexis 2008). Settlers then filed a complaint in the trial court, alleging that the District's "practice and billing method based upon ERU[s] has resulted in the arbitrary, capricious, and discriminatory assessment of fees against [Settlers]" because individual apartment units generate less wastewater than other users. Settlers also claimed that the District failed to comply with the wastewater-measurement requirements set forth in rule R317-5-1.14 of the Utah Administrative Code. After holding a bench trial in November 2012, the trial court issued Findings of Fact and Conclusions of Law and dismissed Settlers' complaint with prejudice. Settlers appeals.

ISSUES AND STANDARDS OF REVIEW

¶5     Settlers argues that the trial court erred when it (1) misinterpreted Addendum C in determining that the ERU fee structure is not arbitrary and capricious; (2) failed to find that Settlers is a nonresidential user; (3) failed to apply the language of Addendum C to determine what is an "appropriate" assignment of ERUs for apartments; (4) used the wrong standards when examining advantages and disadvantages between rate payers of the same residential class; (5) failed to find unreasonable justifications in ERU assignments between residential and nonresidential classes; and (6) failed to find that single-family residential customers received an advantage over owners of multifamily residential customers.[3]

---

3. On appeal, Settlers does not challenge the trial court's dismissal of its claim under rule R317-5-1.14 of the Utah Administrative Code. However, we address rule R317-5-1.14 in our analysis of whether the District acted reasonably in developing and implementing the ERU fee structure. *See infra* ¶ 15.

¶6 Settlers has framed issues (2),[4] (5), and (6) as challenges to the adequacy of the trial court's findings, but Settlers failed to preserve these challenges. "[T]o preserve a challenge to the adequacy of a trial court's findings, a party must first raise that challenge in the trial court to give that court 'an opportunity to correct the alleged error.'" *Smith v. Simas*, 2014 UT App 78, ¶ 10 n.1, 324 P.3d 667 (quoting *In re K.F.*, 2009 UT 4, ¶¶ 59–61, 201 P.3d 985). Settlers did not challenge the adequacy of the trial court's findings below by, for example, filing a rule 59 motion with the trial court requesting that the court amend or supplement its findings. *See* Utah R. Civ. P. 59(a). Settlers has therefore waived all claims on appeal alleging that the trial court's findings are inadequate. *See In re K.F.*, 2009 UT 4, ¶ 60.

¶7 The remaining issues raised by Settlers—(1), (3), and (4)—essentially coalesce into a challenge to the trial court's determination that the District's practice of assigning ERUs instead of actual water usage measurements and assigning one ERU per

---

4. Settlers appears to challenge the adequacy of the trial court's finding that Settlers is a residential user, but Settlers has failed to preserve this claim. Even if we were to consider whether the trial court's determination that Settlers is a residential user is correct, we are unpersuaded by Settlers' sole reliance on *Pinetree Associates v. Ephraim City*, 2003 UT 6, 67 P.3d 462. In *Pinetree*, Ephraim City assessed a monthly minimum rate for water usage for the first 7,000 gallons of water used per month, and incremental charges for usage greater than 7,000 gallons, regardless of whether a user was residential or nonresidential. *Id.* ¶ 5. The court determined that Ephraim City's ordinance provided that rates could be determined only by actual water measured to the customer and that the City could not assess separate minimum monthly charges to individual condominium units in a building where the water to the building was measured through a sole meter. *Id.* ¶¶ 5–6, 16–17. But here, the District's fee structure is not based on actual measurements or usage. The fact that *Pinetree* also involved a multi-unit building is irrelevant to our analysis. With no other legal analysis or support, Settlers has failed to show that the trial court erred in finding that Settlers is a residential user. *See infra* ¶ 12.

residential user is reasonable, regardless of whether that user is a single-family home or a single apartment unit within a multi-unit apartment building. We review for correctness a trial court's ultimate determination as to whether a municipally owned utility acted reasonably.[5] *Platt v. Town of Torrey*, 949 P.2d 325, 327–28 (Utah 1997). In doing so, "we defer to the trial court's factual findings unless they are shown to be clearly erroneous." *Jensen v. Jensen*, 2007 UT App 377, ¶ 2, 173 P.3d 223 (citation and internal quotation marks omitted).

¶8     Settlers also argues that it is entitled to attorney fees under the private-attorney-general doctrine. Whether a party is entitled to attorney fees is a question of law, which we review for correctness. *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998).


ANALYSIS


¶9     The trial court analyzed the District's ERU fee structure by applying the "arbitrary and capricious" standard, as set forth in *Springville Citizens for a Better Community v. City of Springville*, 1999 UT 25, ¶¶ 23–24, 979 P.2d 332. However, *Springville Citizens* is a land-use case, and the appropriate standards for judicial review of those decisions are prescribed by Utah Code section 10-9a-801(3). Here, the relevant case law and statute direct an appellate court to review for reasonableness a special service district's decisions

---

5. We recognize that a special service district is legally separate and distinct from the municipality or county that established it. *See* Utah Code Ann. § 17D-1-103(1)(a) (LexisNexis 2009). While a special service district is not a municipality, it is considered a quasi-municipal corporation. S*ee id.* § 17D-1-103(1)(b). Accordingly, we analyze the District's actions by applying the analogous standards governing municipally owned utilities. *Cf. Tygesen v. Magna Water Co.*, 226 P.2d 127, 132 (Utah 1950) ("The governmental acts of quasi-municipalities are like those of true municipalities . . . ."); *Home Owners' Loan Corp. v. Logan City*, 92 P.2d 346, 349 (Utah 1939) ("[W]e see no distinction between a public service corporation and a municipality itself.").

regarding fees charged for providing public services to its residents. *See* Utah Code Ann. § 54-3-1 (LexisNexis 2010) ("All charges made, demanded or received by any public utility . . . for any service rendered . . . shall be just and reasonable.").

¶10    In *Platt v. Town of Torrey*, the Utah Supreme Court explained that "a municipally owned utility must act reasonably when serving its residents and that the courts will enforce reasonableness when it does not."[6] 949 P.2d 325, 329 (Utah 1997); *see also Mantua Town v. Carr*, 584 P.2d 912, 914 (Utah 1978) (explaining that a court "will not intervene [in the administration of municipal services] unless the administrative action is capricious, arbitrary or unreasonable"). The court further explained that because rate setting "is an inexact science," the determinations made by public officials entrusted with setting the rates "should not be disturbed if there is any reasonable basis" for their determinations. *Platt*, 949 P.2d at 334 (citation and internal quotation marks omitted). And "[r]ate making is a legislative function to which courts owe a degree of deference." *Id.* Thus, because "[r]ates established by a municipality for utility service to inhabitants are presumptively reasonable," the court instructed that "one who challenges such rates as unreasonable has the burden of proof." *Id.* at 332 (citation and internal quotation marks omitted). In this case, that burden of proof falls on Settlers. Therefore, in deciding whether the trial court's decision was correct, we review the District's ERU fee structure and evaluate whether Settlers has demonstrated that no

---

6. The supreme court observed that the "requirement that a municipality supplying public services to its own residents must act reasonably is stated more explicitly throughout Utah law. Article XI, section 6 of the Utah Constitution mandates that a municipal corporation supply water owned by it to its inhabitants 'at reasonable charges.' Utah Code [section] 10-8-38 authorizes municipalities to construct and operate sewer systems and to 'make a reasonable charge for the use thereof.'" *Platt v. Town of Torrey*, 949 P.2d 325, 329 (Utah 1997); *see also Patterson v. Alpine City*, 663 P.2d 95, 96 (Utah 1983) ("Municipalities may make a reasonable charge for the use of a sewer system in order that it be self-sustaining.").

reasonable basis supports the District's implementation of the ERU fee structure.

¶11    As an initial matter, and contrary to Settlers' argument that the trial court erred in interpreting the Ordinance setting forth the sewer-use and charging policies, we conclude that the Ordinance expressly authorizes the District to assign each residential household, including individual apartment units, one ERU. "We interpret municipal and county ordinances and resolutions according to our well-settled rules of statutory interpretation and construction." *Pinetree Assocs. v. Ephraim City*, 2003 UT 6, ¶ 13, 67 P.3d 462. "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *Id.* (citation and internal quotation marks omitted).

¶12    Addendum C to the Ordinance states "An Equivalent Residential User (ERU) will equate to one (1) unit per residential household." Addendum C provides a list of users classified according to water-usage estimates based on standards formulated by the Utah Department of Environmental Quality. The list of users in Addendum C assigns one ERU "per household" to each "single family dwelling." And section 2.7.1 of the District's sewer-use and charging policies states, "For purposes of the foregoing rates, apartments . . . and other multiple unit developments shall be charged as though the development were a *group of single family dwellings . . . .*" (Emphasis added.) Thus, the plain language of the Ordinance unambiguously permits the District to treat each apartment unit as one single-family dwelling and, as a result, assign each apartment unit one ERU.

¶13    We next turn to the question of whether such a classification is reasonable. "Classification of customers must necessarily be accomplished by reference to general characteristics having some rational nexus with the criteria used for determining just and reasonable rates." *Mountain States Legal Found. v. Utah Pub. Serv. Comm'n*, 636 P.2d 1047, 1052–53 (Utah 1981). "Whether cost of service, value of service, or other criteria are used, either alone or in conjunction with each other, classifications of persons must be

on the basis of similar—but not identical--characteristics." *Id.* at 1053. Here, the trial court concluded that the District's decision to charge fees based on customers' common characteristic as "residential users" under the ERU fee structure and not on the basis of actual water usage—as Settlers argues that the District was required to do—was a reasonable means of classifying the District's customers and assigning a monthly fee. The trial court supported its conclusion with thorough factual findings, and Settlers has failed to challenge these findings. We therefore defer to the court's findings. *See Jensen v. Jensen*, 2007 UT App 377, ¶ 2, 173 P.3d 223.

¶14 The trial court's factual findings repeatedly state that the District's ERU fee structure is not tied to the "actual use by any individual or class of customer" of the District's sanitary sewer collection system, because actual usage, or the metered inflows and outflows, has "little to no bearing on the District's costs/expenses of providing District services." The District does not have the ability to measure actual sanitary sewer outflows for any users in its system, including Settlers.[7] Accordingly, actual usage or impact upon the sewer system is irrelevant in calculating residential-unit fees. And although the District measures actual culinary water inflows for Settlers and the "District has the ability to correlate sanitary sewer flows from culinary inflows for Settlers," it "does not have that ability with any of its other users." Consequently, "sanitary sewer flow within the District is not measured." Rather, the trial court found that the ERU fee charged by the District "is a flat fee intended to recover all sanitary sewer service costs incurred by the District to provide such services, including debt service, operations and maintenance, and treatment costs, and represents the proportionate cost/burden borne by each ERU as beneficiaries

---

7. Sanitary sewer outflows are the effluent or outgoing flows of sewage produced by users and directed to treatment facilities. As found by the trial court, "the amount of effluent produced is only a minor factor in the costs borne by the District" and any disparity alleged by Settlers between the amount of sanitary sewer outflow for each of its apartments and that of a single-family residence "is largely irrelevant to the assigning of ERU[s]."

of the system" because the District's administrative and treatment costs are driven by the number of users, not actual use. In other words, the trial court described the ERU fee as "a minimum fee for the necessary capacity and utilization of the District's sanitary sewer system." The trial court found that "[a]bsent actual use data for the entire system, the District's practice of using a surrogate to actual measures (i.e., the ERU) is a reasonable practice." In making these findings, the court observed that "Settlers offered no evidence to tie actual use to the costs the District incurs to provide sanitary sewer service." Settlers thus failed to meet its burden of proof. *See Platt,* 949 P.2d at 332. Therefore, because actual usage is irrelevant, classifying customers according to their status as equivalent residential users forms a "rational nexus" with the criteria, as outlined above, used by the District for "just and reasonable" rate making. *See Mountain States*, 636 P.2d at 1052–53.

¶15     The following factors further support the reasonableness of the District's ERU fee structure and assignment of one ERU to both single-family homes and individual apartment units. First, the trial court found that, as a matter of fact, "the District's sanitary sewer system was designed and constructed in compliance with and as mandated by the State of Utah" and "the District's user fee system was reviewed and approved by various appropriate agencies of the State of Utah," including the Division of Water Quality. Second, the version of the Utah Administrative Code in effect at the time the District implemented its sewer collection system provided that the "maximum daily wastewater flow to be disposed of should be determined as accurately as possible, preferably by actual measurement," but "[*w*]*here this is not possible*, Table 5-2 may be used to estimate the flow." Utah Admin. Code R317-5-1.14 (2002) (emphasis added) (current version at Utah Admin. Code R317-4-6.4). The trial court found that "[a]t the time of the design and construction of the District's sanitary sewer system, no actual sanitary sewer flow information was available for the potential users that may be located within the District." It was thus not possible for the District to measure actual sewer usage at the time it developed its sewer collection system. As an alternative, the District implemented the ERU fee structure. Nevertheless, it is telling that if the District had used Table 5-2 to estimate sewer

flows, Table 5-2 assigned the same numerical flow estimate to condominiums, mobile homes, and single-family dwellings. *Id.* No separate classification was provided for apartment buildings or individual apartment units under Table 5-2. Therefore, treating single-family dwellings and individual apartment units as equivalent for the purpose of setting its rates was consistent with the Utah Administrative Code. Finally, we recognize that setting just and reasonable rates is often an "inexact science . . . function to which courts owe a degree of deference." *Platt v. Town of Torrey*, 949 P.2d 325, 334 (Utah 1997) (citation and internal quotation marks omitted). We afford the District such deference here. We therefore agree with the trial court that "while the District's decision to equate single-family homes and apartments in assessing the [ERU] Fee may not be the best or optimal rate policy[,] . . . [it] is not unreasonable."

¶16    Finally, Settlers argues that it is entitled to attorney fees under the private-attorney-general doctrine. However, attorney fees may be awarded under the private-attorney-general doctrine only when the "vindication of a strong or societally important public policy takes place and the necessary costs in doing so transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization." *Utahns for Better Dental Health–Davis, Inc. v. Davis County Clerk*, 2007 UT 97, ¶ 5, 175 P.3d 1036 (citation and internal quotation marks omitted). Because we affirm the trial court's dismissal of Settlers' complaint, Settlers has not vindicated a "strong or societally important public policy." Settlers' claim for attorney fees accordingly fails.[8]

---

8. Settlers has not presented in its opening brief on appeal any argument specifically addressing impact fees, though it did passively refer to them in its background section. Settlers did address impact fees in its reply brief, but it did so only in response to a jurisdictional argument raised by the District. "It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Allen v. Friel*, 2008 UT 56,

(continued...)

CONCLUSION

¶17    The trial court correctly determined that the District's ERU fee structure is reasonable. Accordingly, we affirm the trial court's dismissal of Settlers' complaint.

————————

8. (...continued)
¶ 8, 194 P.3d 903 (citation and internal quotation marks omitted); *see also* Utah R. App. P. 24(a)(9). We therefore decline to further consider this issue.