2012 UT 58

### Allen F. GRAZER, Plaintiff and Petitioner,

v.

### Gordon A. JONES and Linda G. Jones, husband and wife and as Trustees of the Gordon and Linda Jones Family Trust; Gordon Jones Construction, L.C.; Richard H. Barney and Renae Carnon Barney, husband and wife; Ludvig D. Olsen and Jackie M. Olsen, Trustees of the Ludvig D. Olsen and Jackie M. Olsen Trust, Defendants and Respondents.

No. 20110243.

Supreme Court of Utah.

Sept. 14, 2012.

Joseph M.R. Covey, Michael T. Hoppe, Salt Lake City, for respondent.

Lincoln W. Hobbs, Salt Lake City, for petitioner.

Justice LEE, opinion of the court:

¶ 1 In 2005, Allen Grazer obtained a judgment against Gordon Jones and Richard Bar-

ney for breach of contract. To satisfy the judgment, property held by Jones and Barney was sold at a sheriff's sale and purchased by Grazer's attorney on his client's behalf. Jones and Barney assigned their redemption interests to the Olsen Trust, which attempted to redeem the property under rule 69C(c) of the Utah Rules of Civil Procedure. Grazer challenged that attempt as invalid because it was not in full compliance with the rule.

¶ 2 The district court granted the Olsen Trust's Cross Motion for Partial Summary Judgment, concluding that the trust had substantially complied with rule 69C(c). The court of appeals affirmed, upholding the district court's decision under the "substantial compliance" standard in the case law. *Grazer v. Jones*, 2011 UT App 51, ¶ 16, 249 P.3d 1000. We likewise affirm, but on somewhat different grounds. Instead of analyzing the matter of the *substantiality* of a party's compliance with rule 69C(c), we clarify the requirements of the rule under circumstances like those presented here. Specifically, we identify circumstances in which the service called for under the rule would be superfluous and we interpret the rule not to require superfluous acts. And because the Olsen Trust fulfilled all non-superfluous requirements of rule 69C(c), we uphold its redemption under the rule and accordingly affirm.

I

¶ 3 Allen Grazer contracted with Gordon Jones and Richard Barney for the construction of a custom home. In light of defects in the construction of that home, Grazer later obtained a judgment for nearly two million dollars against Jones and Barney for breach of contract. In order to enforce the judgment, Grazer procured a writ of execution against Jones's and Barney's interests in property located in West Bountiful. On January 17, 2008, the Davis County Sheriff sold this property at auction. Grazer's attorney, Lincoln Hobbs, bid on and purchased the property on behalf of his client for $191.00. Although Grazer successfully purchased the property, Jones and Barney retained the right to redeem it within 180 days under rule 69C of the Utah Rules of Civil Procedure.

¶ 4 Nearly six months later, on July 3, 2008, Jones and Barney assigned their redemption rights in the property to the Olsen Trust. On July 8, the Olsen Trust attempted to redeem the property by delivering a copy of the assignment, a check payable to Hobbs in the amount of $210.00, and a certificate of redemption. Hobbs rejected the redemption that same day, asserting that he was not authorized to accept payment or service on Grazer's behalf. He further stated that, in any event, he was unable to accept payment because the check was not made out to Grazer.

¶ 5 The following day, Hobbs recorded a Notice of Amounts Paid and Owed with the Davis County recorder, claiming that Grazer had incurred $2,178.00 for amounts paid in connection with the sale of the property plus $2,750.00 for the use and occupation of the property since the sale. *Grazer*, 2011 UT App 51, ¶ 4, 249 P.3d 1000. At some point after recording this notice, Hobbs informed the Olsen Trust that he now had authority to accept service of the redemption materials on Grazer's behalf. Then, on July 10, 2008, the Olsen Trust again attempted to redeem the property, delivering to Hobbs a copy of the assignment, a check payable to Grazer in the amount of $210.00, and a certificate of redemption. Hobbs again rejected the redemption on July 14, 2008, asserting that $210.00 was not the correct amount owed. The redemption period expired the next day.

¶ 6 Grazer filed a motion for partial summary judgment with the district court on January 9, 2009, seeking to have the attempted redemptions declared invalid and asking the court to order the Sheriff to complete the sheriff's deed and finalize the sale. *Id.* ¶ 7. In response, the Olsen Trust filed a cross motion for partial summary judgment, arguing that its redemption attempts were valid and erroneously rejected. Following argument, the district court concluded that the Olsen Trust's July 8 redemption was valid because it had "substantially compl[ied] with Rule 69C(c)." The court of appeals affirmed on the ground that this court had "found substantial compliance in [*United States v.*] *Loosley* based on the same document deficiencies." *Id.* ¶¶ 12, 16. Grazer filed a peti-

tion for certiorari with this court, which we granted.

## II

¶ 7 Grazer contends that rule 69C(c) requires strict compliance, and thus that the court of appeals erred in applying a substantial compliance standard. Grazer also insists that, even under that standard, the Olsen Trust's first redemption failed to substantially comply with the requirements of rule 69C(c). For its part, the Olsen Trust argues that the court of appeals correctly applied a substantial compliance standard in interpreting rule 69C(c), and that despite the failure to provide a copy of the judgment and an affidavit on the amount due, it "substantially complied with the procedural requirements of ... [the] rule" since Grazer already had that information. We agree in large part with the Olsen Trust and accordingly conclude that its first attempted redemption was valid and enforceable under rule 69C(c) of the Utah Rules of Civil Procedure.

¶ 8 We reach this conclusion on grounds somewhat different from those advanced by the parties. We first conclude that Hobbs, as Grazer's duly authorized agent, improperly rejected service and payment of the redemption check. Second, because Grazer was obviously in possession of the judgment in his favor and would have been the source of the information as to the amount owed under it, we hold that rule 69C(c) cannot reasonably be read to require superfluous service of those documents on the party (Grazer) who was ultimately their source. In light of this construction, we uphold the Olsen Trust's redemption as compliant with the relevant provisions of rule 69C(c), while repudiating as unhelpful our case law's prior reliance on the notion of "substantial compliance." And finally, we hold that since a valid redemption had already taken place, Grazer's recorded notice of costs on July 9 was untimely.

## A

¶ 9 Grazer's threshold ground for challenging the Olsen Trust's redemption is the notion that its first attempt was invalid because the proffered redemption check was made out to Hobbs and not Grazer. Although the district court recognized Hobbs as Grazer's agent (a finding Grazer failed to challenge on appeal, *Grazer v. Jones*, 2011 UT App 51, ¶ 14, 249 P.3d 1000), Grazer still insists that Hobbs somehow lacked authority to accept payments on his behalf and urges reversal on that basis. We disagree and conclude that Hobbs erred in refusing to accept the Olsen Trust's redemption attempt on July 8, 2008, holding that Hobbs qualified as an agent with both actual and apparent authority.

¶ 10 An agent has actual authority where the principal identifies his authority to perform a particular act on the principal's behalf. *Zions First Nat. Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094–95 (Utah 1988). An agent's actual authority includes those acts incidental or collateral to the accomplishment of the actions for which the agent has direct authority. *Id.*

¶ 11 Even when the principal has not vested actual authority, moreover, the agent may yet have apparent authority. Where the principal does something to support a third party's reasonable belief that the agent has the authority to act, that agent is vested with apparent authority to bind the principal. *See City Elec. v. Dean Evans Chrysler–Plymouth*, 672 P.2d 89, 90 (Utah 1983); *see also* Restatement (Third) of Agency § 2.03 (2006). As we clarified over a century ago,

> [W]here a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform, on behalf of his principal, a particular act, such particular act having been performed, the principal is estopped as against such innocent third person, from denying the agent's authority to perform it.

*Campbell v. Gowans*, 100 P. 397, 401 (1909) (internal quotation marks omitted). It follows that where the agent appears for all intents and purposes to have such authority, he will be estopped from claiming otherwise.

■ ¶ 12 Here, Hobbs was clearly Grazer's agent, vested with both actual and apparent authority. Grazer instructed Hobbs to attend the sheriff's sale and bid on his behalf. *See Grazer*, 2011 UT App 51, ¶ 2, 249 P.3d 1000. Hobbs also represented Grazer throughout the course of the litigation with Jones and Barney and in subsequent dealings with the Olsen Trust. Acceptance of the redemption documents would naturally fall under the actual authority already delegated to Hobbs. And of course attorneys often receive payments from third parties on behalf of their clients. When that happens, attorneys must notify the client, put the funds in the client's trust account, and, after verifying that they have cleared, disburse them to the client. *See* UTAH RULES OF PROF'L CONDUCT 1.15(d); *see also* Kate A. Toomey, *Practice Pointer: Managing Your Trust Account*, 17 UTAH B.J., December 2004, at 6, 7. In light of this established practice, there was no ground for Hobbs to conclude that he could not accept the redemption check because it was made out to him instead of his client.

■ ¶ 13 Even if Hobbs could plausibly deny actual authority to receive the redemption documents on Grazer's behalf, the Olsen Trust was still entitled to treat him as an agent with apparent authority. Hobbs obtained the writ of execution for the West Bountiful property, bid at the sheriff's sale, and purchased the property at Grazer's behest. Based on his actions up to that point, it was quite reasonable for the Olsen Trust to expect that Hobbs was Grazer's agent and therefore authorized to accept payment on behalf of his principal.[1] We accordingly conclude that Hobbs was Grazer's agent and that he was in error when he refused to accept the redemption check submitted to him.

B

¶ 14 Grazer next challenges the Olsen Trust's redemption as having failed to comply with rule 69C(c)'s requirement of delivery of a certified copy of both the judgment on the property and an affidavit showing the amount due. Despite these acknowledged omissions, the Olsen Trust defends its redemption as having "substantially complied" with the rule.

¶ 15 The parties and the courts below all have framed the issue in terms of "substantial compliance" with rule 69C(c). That is understandable, as our opinions have used the same terminology.[2] In implementing this standard, we have also attempted to draw a faint boundary between "substantive" and "procedural" rights in the redemption process, requiring strict compliance with respect to the former and a more relaxed standard for the latter.[3] On reflection, however, we find this formulation more confusing than helpful and accordingly reject it.

¶ 16 The rule itself says nothing about "substantial" compliance. Nor does it provide any basis for distinguishing "substantive" elements of the rule from "procedural" ones. And without more, a jurisprudence of "substantiality" seems certain to turn on subjective, arbitrary assessments of whether a party came "close enough" to compliance with the rule. That approach is unmanageable; it deprives the parties to a redemption of a predictable legal standard to guide their affairs. We accordingly repudiate the substantial compliance standard heretofore articulated in our case law.

¶ 17 In so doing, we do not reject the entirety of the approach we have taken in the past, much less overrule the decisions we have handed down. Instead, we offer a reformulation of the standard that applies under rule 69C(c), under terms that maintain

---

1. Grazer conceded as much at oral argument, stating that "for purposes of accepting the documents, I think that it was reasonable for [the Olsen Trust] to assume that [Hobbs was Grazer's agent]."

2. *See Springer v. Springer*, 853 P.2d 888, 891 (Utah 1993); *Huston v. Lewis*, 818 P.2d 531, 535

n.13 (Utah 1991); *Mollerup v. Storage Sys. Int'l.*, 569 P.2d 1122, 1124 (Utah 1977); *United States v. Loosley*, 551 P.2d 506, 508 (Utah 1976); *see also Tech–Fluid Servs., Inc. v. Gavilan Operating, Inc.*, 787 P.2d 1328, 1334 (Utah Ct.App.1990).

3. *See, e.g., Huston*, 818 P.2d at 535 n.13.

fidelity to the text while reaffirming the results of our precedents in this area.

¶ 18 Our past decisions can be understood to rest not solely on an undefined notion of substantiality, but also on an analysis of prejudice or injury. Thus, when we have found a party's compliance with rule 69C(c) to be imperfect but "substantial," our inquiry has focused on whether the debtor's inactions or omissions have "injured or adversely affected" the creditor.[4] Specifically, when a redemption has been upheld despite a failure to fulfill a requirement in the rule, it has been on grounds of harmlessness—that the purchaser could not have been affected by the redemptioner's noncompliance.[5] And when noncompliance with the rule has been fatal to redemption, it has been because the failure to fulfill the rule was not harmless but prejudicial.[6]

¶ 19 This prejudice analysis is widely employed in other jurisdictions.[7] And its application yields a manageable standard to guide parties and courts going forward. We interpret our rule accordingly, repudiating the vague principle of substantiality in favor of a prejudice or harmlessness analysis. Under this approach, a redemption that falls short under rule 69C may nonetheless be effective where the deficiencies are harmless in the sense of not prejudicing the purchaser in any way.

¶ 20 A redemption like that effected by the Olsen Trust easily survives under this standard. The Trust failed to provide a copy of the judgment or an indication of the amount due thereunder, but that failure cannot possibly have prejudiced Grazer. Where the purchaser is the judgment creditor, it is apparent that the purchaser already has a copy of the judgment, as he is the one who secured it. So service of the judgment would be utterly superfluous, and the failure of service is thus a harmless, technical violation of the rule. As for the amount due on the judgment, service would be worse than superfluous. It would be circular, in the sense that the information provided to the purchaser would ultimately come from the purchaser, who is the one who would know how much is still owing on the judgment. The failure to serve superfluous or circular material cannot possibly result in any prejudice to the purchaser, and we thus uphold the Olsen Trust's redemption under rule 69C.[8]

4. *See, e.g., Loosley,* 551 P.2d at 508 ("Therefore, if a debtor, acting in good faith, has substantially complied with the procedural requirements of the rule *in such a manner that the [lien holder] is not injured or adversely affected,* and is getting what he is entitled to, the law will not aid in depriving the [debtor] of his property for mere falling short of exact compliance with technicalities." (emphasis added)); *Huston,* 818 P.2d at 535 n.13 (quoting *Loosley* ).

5. *See, e.g., Loosley,* 551 P.2d at 507–08 (concluding that although the redemptioner failed to serve on the purchasers "a certified copy of the docket of Judgment or a memorandum of record ...[and] an affidavit...showing the amount actually due on the lien" and delivered the check to the purchasers' attorney rather than one of the purchasers, these failures "had [no] adverse effect upon [the purchasers]").

6. *Huston,* 818 P.2d at 535, 537 (rejecting a redemptioner's appeal in part on the rationale that, since a purchaser at a sheriff's sale has the right "either to receive the proper redemption amount in accordance with [the rule] or to have the title perfected at the end of the six-month period," and given that the redemptioners "wait[ed] until the last moment to raise their claim," the purchaser was prejudiced and would be further prejudiced by any additional extension of the redemption period).

7. *See, e.g., Matcha v. Wachs,* 646 P.2d 263, 266 (Ariz. 1982) ("[I]n the absence of prejudice to the other parties, substantial compliance with the requirements of [the statute] will be sufficient to effect a redemption."); *TCM Prop., LLC v. Gunderson,* 720 N.W.2d 344, 350 (Minn.Ct.App.2006) ("[S]trict construction does not preclude redemption when formal defects do not prejudice the rights of junior lienors."); *Savoy v. Cascade Cnty. Sheriff's Dep't,* 887 P.2d 160, 164 (Mont. 1994) ("[I]n the absence of some form of prejudice to parties involved, substantial compliance with redemption statutes is sufficient to affect a redemption in connection with mortgage foreclosure."); *GESA Fed. Credit Union v. Mut. Life Ins. Co. of N.Y.,* 713 P.2d 728, 732 (Wash. 1986) (noting that substantial compliance with requirements of redemption statute is sufficient "[w]here a party, in exercising its redemption right, commits a technical but harmless procedural error").

8. The prejudice analysis under rule 69C is distinct from the standard we apply to service of process under rule 4 of our rules of civil procedure. The standards for service of the summons and complaint under rule 4 are truly "strict."

C

¶ 21 Grazer's last point is his challenge to the court of appeals' conclusion that Grazer waived his claim to additional costs by recording notice a day after the Olsen Trust's first attempt at redemption. *Grazer*, 2011 UT App 51, ¶ 13, 249 P.3d 1000. Because rule 69C(e) does not expressly establish a time by which the purchaser must record, Grazer insists that the notice can be filed at any time. And because he recorded a notice of amounts paid on July 9, 2008, Grazer argues that the Olsen Trust's failure to subsequently submit a check reflecting the recorded costs invalidates the redemption. We disagree.

¶ 22 Under rule 69C(e), a purchaser's "[f]ailure to file notice" of additional costs with the county recorder "waives the right to claim such amounts." UTAH R. CIV. P. 69C(e). The question raised here is one of timing—*by when* does the purchaser have to file a notice of costs in order to avoid waiver of the right to claim them? In the absence of an express answer to this question in the rule, each side offers a competing construction. Grazer insists that the notice can be filed at any time, while the Olsen Trust says it must be filed prior to the redemption.

¶ 23 We side with the Olsen Trust. Although the rule itself does not expressly speak to timing, an understanding of the legal and practical context surrounding it forecloses Grazer's construction.[9] We accordingly adopt the Olsen Trust's interpretation, as it is consistent with the terms of the rule but avoids absurdities flowing from the perverse incentives that the Grazer approach would generate.[10]

¶ 24 If the purchaser could file a notice of additional costs after redemption, the redemption process could easily be frustrated. A redemption valid on day 60 of the 180–day redemption period, for example, could be upended by a subsequent notice of costs. And if the purchaser waited long enough to file the notice of costs, he could effectively bar the redemptioner from challenging the notice—since a redemptioner has only twenty days from the redemption to challenge the redemption price. UTAH R. CIV. P. 69C(f). Thus, a rule allowing a notice of costs at any time would inject uncertainty into the redemption process and perversely incentivize the purchaser to delay filing a notice of costs.

¶ 25 To avoid these practical problems, we interpret rule 69C(f) to require a notice of costs to be filed *before* redemption. We recognize that this places a burden on purchasers, who may not know exactly when a piece of property may be redeemed and thus may be at risk of waiving costs incurred but not claimed before redemption. But that burden is not unreasonable and not without recourse. A purchaser facing taxes, assessments, insurance, maintenance, and repair costs can file a notice promptly upon incurring these costs. And so doing will avoid any waiver of the right to claim these costs in the redemption process.

¶ 26 Grazer failed to preserve his right to claim costs in this manner. He filed his notice of costs a day after the Olsen Trust's July 8 redemption. He accordingly waived any claim to additional costs and is likewise in no position to challenge the redemption price paid on that date.

See *Redwood Land Co. v. Kimball*, 433 P.2d 1010, 1010 (Utah 1967). In the rule 4 context, no assertion of harmlessness can excuse a failure of service. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir.1991) (holding that "[d]ue to the integral relationship between service of process and due process requirements," actual knowledge of the action cannot cure even technical deficiencies in service of process since "proper service of process is not some mindless technicality" (internal quotation marks omitted)). Thus, it may be said that a failure to comply with rule 4's requirements for service is per se prejudicial—in that no proof of injury is required to sustain a dismissal for a service deficiency under that rule.

9. See *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465 (noting that "the statutory text may not be 'plain' when read in isolation, but may become so in light of its linguistic, structural, and statutory context").

10. See *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 26, 267 P.3d 863 (noting that in choosing between two competing constructions of ambiguous text, the court should adopt the one that avoids practical absurdities).

### III

¶ 27 The Olsen Trust's July 8, 2008 redemption was valid and effective despite alleged deficiencies under rule 69C(c). The Trust served Grazer with all material not generated by Grazer as judgment creditor, tendered the then-appropriate redemption amount, and made the check out to Grazer's duly authorized agent. And although Grazer filed a subsequent notice of costs, that notice was untimely under rule 69C(f). We accordingly affirm the decision of the court of appeals upholding the redemption under our rule.

Justice LEE authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice PARRISH, and Judge HANSEN joined.

Having recused herself, Justice DURHAM does not participate herein; District Judge ROYAL I. HANSEN sat.