**2022 UT App 12**

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE JOHN EDWARD PHILLIPS
FAMILY LIVING TRUST.

PETER O. PHILLIPS,
Appellant,
*v.*
BANK OF UTAH, ET AL.,
Appellees.

Opinion
No. 20200381-CA
Filed January 27, 2022

First District Court, Logan Department
The Honorable Angela Fonnesbeck
No. 183100095

Adam S. Affleck, Attorney for Appellant

Brett N. Anderson and Scott R. Taylor, Attorneys for
Appellee Bank of Utah

James K. Tracy, Robert S. Tippett, James C.
Dunkelberger, and Hyrum Jacob Bosserman,
Attorneys for Appellee Rachel Phillips Selby

Fred D. Essig and Troy L. Booher, Attorneys for
Appellees Shaun Phillips, Michelle Mittleman, Doris
Rubio, and Charlene Phillips

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGE GREGORY K. ORME and SENIOR JUDGE KATE
APPLEBY concurred.[1]

---

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

CHRISTIANSEN FORSTER, Judge:

¶1 This case concerns the administration of the testamentary trust of John Edward Phillips (the JEP Trust). The terms of the JEP Trust provided that upon the death of John Edward Phillips (John),[2] the trust assets were to be divided in three shares among John's three sons. The shares of two of the sons, James E. Phillips and Peter O. Phillips, were to be held in separate trusts for their respective benefit. The third son, John C. Phillips (Johnny), was named trustee of the JEP Trust and of his brothers' subtrusts.

¶2 After Johnny died, Bank of Utah (the Bank) became the successor trustee of the JEP Trust and Peter's daughter, Rachel Phillips Selby, was appointed successor trustee of the Peter O. Phillips subtrust (POP Trust). The Bank distributed by selling a valuable trust asset, a farm property, to the highest bidder, which was Johnny's estate (the JCP Estate).

¶3 Peter, the main beneficiary of the POP Trust, took issue with the Bank's sale of the farm property to the JCP Estate. Peter filed a petition seeking to have the farm property returned to the JEP Trust and to remove the Bank as its successor trustee.

¶4 The Bank moved to dismiss Peter's petition on the ground that Peter lacked standing to challenge the distribution by sale of the farm property and its role as trustee because Peter was not a beneficiary of the JEP Trust. The district court agreed but did not dismiss the petition. Instead, it substituted Selby as the petitioner because, as the trustee of the POP Trust, she was the real party in interest and therefore was the one with standing to pursue the claims.

---

2. As is our practice, because the parties share the same last name, we refer to each by their first name, with no disrespect intended by the apparent informality.

¶5     Selby and the other parties eventually executed an agreement in which they settled all claims in the lawsuit. The parties then submitted the signed agreement to the court for approval. After this, Peter filed a motion to intervene. The court denied Peter's motion as untimely and approved the settlement agreement.

¶6     Peter now challenges the district court's decisions to (1) dismiss him for lack of standing and substitute Selby as the real party in interest and (2) deny his motion to intervene. We affirm.

BACKGROUND

¶7     John created the JEP Trust through a restated trust agreement and three amendments. The terms of the final JEP Trust provided that the relevant JEP Trust assets were to be divided into three shares for his sons: 45% to Johnny; 30% to James; and 25% to Peter.[3] The manner of distribution for each share was also provided. Per the terms of the original JEP Trust document, James's share was to "be held in a separate Trust for the benefit of James E. Phillips and his issue," with Johnny as trustee. And under the terms of the third amendment to the JEP Trust, Peter's share should be "distributed in the identical manner" as that of James's; that is, through a subtrust.

¶8     John died in May of 2014, triggering the distribution of the JEP Trust assets. In accordance with the second amendment to the JEP Trust, Johnny became sole trustee of the JEP Trust.

¶9     Shortly after John's death, Peter filed a petition in the district court asking to (1) invalidate the second and third amendments to the JEP Trust, (2) remove Johnny as trustee of

---

3. John also has a daughter who was awarded "zero percent" of the trust assets.

the JEP Trust and appoint a successor trustee, (3) order Johnny to provide an accounting for the JEP Trust, and (4) declare that Peter's share of the JEP Trust would not be held in a separate trust.

¶10 Peter, Johnny, and James signed a stipulation that resolved all these issues except the accounting issue. As relevant here, the stipulation (1) declared the second and third amendments to the JEP Trust to be valid; (2) kept Johnny as trustee of the JEP Trust but named Peter's daughter, Rachel Phillips Selby, as successor trustee of the POP Trust; and (3) declared that Peter's share of the JEP Trust would be paid to the POP Trust, not to Peter. With regard to the accounting issue, the stipulation provided that Peter would retain his claims "related to the accounting of and the distribution of the assets of the JEP Trust."

¶11 In 2015, while serving as trustee of the JEP Trust, Johnny died. Johnny's undistributed share of the JEP Trust passed to the JCP Estate. The Bank was appointed as the successor trustee of the JEP Trust.

¶12 In 2017, the Bank, as trustee, began to market approximately 47.75 acres of farm property held by the JEP Trust. After weeks of formal listing, the Bank received multiple offers from third parties to purchase the farm property. The "highest and best offer" received was an offer of $2,350,000 from a local homebuilder. The Bank disclosed these offers to the JEP Trust beneficiaries and other members of the Phillips family and invited them to submit competing offers to purchase the farm property; offers could include "a credit against the beneficiary's anticipated distribution."

¶13 Thereafter, Charlene Phillips, Johnny's estranged wife, made an initial offer (the JCP Offer) to purchase the farm property for a credit against her share of the JEP Trust on terms

equal to the net value of the highest third-party offer.[4] The JCP Offer was then modified a number of times to ensure that the purchase price was equal to or greater than the third-party offer. In the end, the Bank accepted the modified JCP Offer, netting an increase to the POP Trust of $1,179 over the highest third-party offer, and conveyed the farm property to the JCP Estate.[5]

¶14     Unhappy with the transaction, Peter filed a petition in the district court seeking relief on three claims related to the Bank's distribution of the farm property. First, Peter sought a declaration that Johnny's share of the JEP Trust should have been distributed to Johnny's children instead of to the JCP Estate. Second, Peter sought to remove the Bank as trustee of the JEP Trust. Third, Peter sought to set aside the Bank's transfer of the farm property to the JCP Estate.

¶15     The Bank moved to dismiss Peter's petition for lack of standing. The Bank argued that Peter lacked "standing to assert the subject claims and [was] not the real party in interest" because he was "not a beneficiary of the JEP Trust, but [was] instead the beneficiary of" the POP Trust. Shortly thereafter, Selby filed a motion to be joined as a petitioner in the matter, asserting that any beneficial interest Peter would receive from the JEP Trust was to be paid to the POP Trust, and she, as trustee of the POP Trust, held any claims related to Peter's share of the JEP Trust. Accordingly, Selby argued she was "the real party in interest" with standing to assert the claims brought by Peter.

---

4. Charlene—instead of the JCP Estate--made the initial offer on the farm property because, pursuant to a California settlement agreement, she will receive Johnny's entire share in the JEP Trust.

5. The modified offer was made by the JCP Estate, rather than Charlene, to ensure that the capital gains tax savings that would result from a distribution of the farm property to a beneficiary—as opposed to a sale to a third party—would apply.

¶16   The district court issued a memorandum decision addressing both motions in which it agreed with the Bank that Peter lacked standing to bring claims against the JEP Trust or the Bank as successor trustee. The court reasoned that under Utah law, Peter was not a beneficiary[6] of the JEP Trust and, even if he qualified as a beneficiary somehow, he had failed to meet any of the "limited instances" where a beneficiary, rather than the trustee, may bring suit against the trust. The court also noted it had "place[d] great weight" on the stipulation in which Peter acknowledged the validity of the JEP Trust and "in accordance with the JEP Trust, any and all beneficial interest that Peter would receive from the JEP Trust shall be paid over and distributed to" the POP Trust. (Quotation simplified.) Nevertheless, the court declined to dismiss the petition, finding it appropriate to substitute Selby, in her capacity as trustee of the POP Trust, as the sole petitioner.

¶17   After Selby replaced Peter as petitioner, she filed a new petition with the district court, seeking an order to set aside the transfer of the farm property from the JEP Trust to the JCP Estate or, alternatively, for payment of damages by the Bank or the JCP Estate for the wrongful distribution of the farm property. Selby's petition did not include Peter's claims for declaratory relief, nor did she seek to remove the Bank as trustee of the JEP Trust.

¶18   While Selby's petition was still pending in the district court, Selby entered into a global settlement agreement with all parties in the case regarding the distribution of the farm property. The agreement, which resolved all remaining issues, was expressly conditioned on the court's approval. It included a request that the court order "that the distribution of the Farm

---

6. A beneficiary is a person who "has a present or future beneficial interest in a trust, vested or contingent; or [who,] in a capacity other than that of trustee, holds a power of appointment over trust property." Utah Code Ann. § 75-7-103(b) (LexisNexis Supp. 2021).

Property by the JEP Trust to the JCP Estate was proper." It also provided the POP Trust would receive a cash payment of $30,000 from the JCP Estate in exchange for an agreement that the JCP Estate would retain the farm property. Finally, upon approval by the court, the terms of the settlement would be final and not subject to appeal and the parties would be barred from bringing any new claims relating to the farm property. The settlement agreement was filed in court for approval through a stipulated motion.

¶19 On November 7, 2019, seven days after Selby filed a motion to approve the settlement agreement, Peter, along with several other family members, filed motions to intervene. Peter argued Selby lacked standing and authority to act as trustee of the POP Trust because she was not willing to prosecute claims of the POP Trust. He also asserted the proposed settlement agreement would impair or impede his ability to pursue "valuable claims" against the trustee of the JEP Trust and the JCP Estate.

¶20 On November 12, 2019, the district court entered an order approving the settlement agreement and dismissing the action with prejudice.[7] After dismissal, the Bank and the other parties, including Selby, opposed the motions to intervene. The district court denied the motions, concluding they did not satisfy the requirements for intervention under rule 24 of the Utah Rules of Civil Procedure because (1) they were "not timely filed"; (2) they were "not accompanied by any pleading setting forth the claims or defenses for which intervention is sought"; (3) the intervenors did not "sufficiently explain how they are so situated that the disposition of [the] action may, as a practical matter, impair or

---

7. Following the entry of the district court's order, Peter filed a motion with the court requesting that it alter, amend, or set aside the order. The court denied this motion in the same decision in which it denied Peter's motion to intervene. Peter does not challenge this decision on appeal.

impede their ability to protect an interest in the subject of [the] litigation"; and (4) the intervenors failed "to satisfy their burden of showing that their interests are not adequately represented by" Selby.

¶21  Thereafter, Peter filed a notice of appeal of the "entire judgment" in the case, "including rulings on all pre- and post-judgment motions."

ISSUES AND STANDARDS OF REVIEW

¶22  Peter raises two issues on appeal. First, he contends the district court erred in granting the Bank's motion to dismiss his petition for lack of standing and in substituting Selby as the real party in interest. "When evaluating standing at the motion-to-dismiss stage, the question of standing is primarily a question of law, which we review for correctness." *Southern Utah Wilderness All. v. San Juan County Comm'n*, 2021 UT 6, ¶ 8, 484 P.3d 1160. "A district court's substitution ruling is a discretionary one that we review for an abuse of discretion." *Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶ 8, 449 P.3d 20.

¶23  Second, Peter contends the district court erred when it denied his motion to intervene to prevent the court's approval of the settlement agreement. "[A] ruling on a motion to intervene encompasses several types of analysis, each subject to a different standard of review." *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 14, 297 P.3d 599. "As a general matter, the factual findings underpinning an intervention ruling are subject to a clearly erroneous standard while the district court's legal conclusions are reviewed for correctness." *Gardiner v. Taufer*, 2014 UT 56, ¶ 13, 342 P.3d 269 (quotation simplified). "We review for abuse of discretion the district court's determination of whether the motion to intervene was timely filed." *Supernova*, 2013 UT 7, ¶ 15 (stating that "timeliness depends on the facts and circumstances of each particular case" (quotation simplified)). "We review for

correctness the district court's determination of whether the intervenor has claimed an interest relating to the property or transaction which is the subject of the action." *Id.* ¶ 16 (quotation simplified). "The district court's determinations of whether the disposition of the action may as a practical matter impair or impede the intervenor's ability to protect the claimed interest and whether that interest is adequately represented by existing parties, are entitled to deferential review." *Id.* ¶ 17 (quotation simplified). "Finally, we review with some deference the district court's ultimate decision to grant or deny a motion to intervene." *Id.* ¶ 18.

## ANALYSIS

### I. Motion to Dismiss for Lack of Standing

¶24 Peter contends the district court erred in ruling that he lacked standing to pursue his claims against the JEP Trust and substituting Selby as the real party in interest.[8] "Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (quotation simplified). "Under the traditional test for standing, the interests of the parties must be adverse and the parties seeking relief must have a legally protectible interest in the controversy." *Id.* (quotation simplified).

¶25 Rule 17 of the Utah Rules of Civil Procedure states that "[e]very action shall be prosecuted in the name of the real party in interest." Utah R. Civ. P. 17(a). "It further mandates that '[n]o

---

8. Appellees contend this court lacks jurisdiction to consider this issue "because Peter did not timely appeal from orders that denied Peter's attempts to intervene and participate as a party in the action." We are not persuaded that we lack jurisdiction and therefore resolve the issues raised on appeal on their merits.

action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed' for, among other things, substitution of the real party in interest." *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 37, 469 P.3d 989 (alteration in original) (quoting Utah R. Civ. P. 17(a)). "The real party in interest is the person entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefits from the action's final outcome." *Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 17, 124 P.3d 269 (quotation simplified).

¶26    In the context of trust litigation, rule 17 provides that a "trustee of an express trust" is a real party in interest with authority to bring trust claims. *See* Utah R. Civ. P. 17(a). Thus, a beneficiary's right to bring suit against third parties is limited and may arise only in instances where (1) the beneficiary's interests are hostile to the trustee's; (2) there is no trustee and the beneficiary must maintain a suit in equity to protect their interest against a third party; or (3) "the trustee has ceased to be trustee, as by death, resignation or removal." *Hillcrest Inv. Co., LLC v. Utah Dep't of Transp.*, 2012 UT App 256, ¶ 23, 287 P.3d 427 (quotation simplified).

¶27    Here, the district court concluded that because Peter was not a beneficiary of the JEP Trust, he lacked standing to bring claims against the JEP Trust and substituted Selby, as trustee of the POP Trust, as petitioner. The court found that Peter "does not have any control or management of the POP Trust [or] the JEP Trust" and that "[t]he POP Trust holds any legal title to the property in and distributed from the JEP Trust, not Peter." The court also noted that, in any event, Peter had failed to demonstrate any of the limited instances that would allow a beneficiary to sue a third party.

¶28    In addition, the court placed "great weight" on the stipulation affirming the validity of the JEP Trust that was signed by all the parties, including Peter. In signing that stipulation, Peter had (1) "acknowledge[d] the validity of the JEP

Trust documents," including the second and third amendments; (2) agreed that his beneficial interest in the JEP Trust would be distributed to the POP Trust; (3) agreed that the POP Trust would be governed by the terms of the JEP Trust; and (4) agreed that Selby would be appointed trustee of the POP Trust.

¶29 Despite this, Peter asserts the district court's dismissal was in error and that he had standing to bring his claims challenging the distribution of the farm property for two reasons. First, he asserts that he is in fact a beneficiary of the JEP Trust as defined under the Utah Trust Code. Second, he argues the terms of the JEP Trust agreement do not prohibit him from participating in questions affecting the distribution of his share of the JEP Trust. Peter's first argument was not preserved for appeal, and his second argument is incorrect.

¶30 Peter did not argue in the district court that under the definitional provisions of the Utah Trust Code he is a beneficiary of the JEP Trust because he retained a testamentary power of appointment over trust property under the JEP Trust. In his opposition to the Bank's motion to dismiss, Peter argued that "[u]nder the plain language of the JEP Trust, [he] is a beneficiary" of the JEP Trust and "has a legally protected interest" in the trust assets. He reasoned the language of the JEP Trust, particularly the third amendment, named him, not the POP Trust, as the intended beneficiary of the JEP Trust. In addition, he asserted the POP Trust is merely the "manner" in which his distributive share of the JEP Trust will be handled.

¶31 This argument, which focuses solely on the interpretation of the plain language of the JEP Trust, including the third amendment, is "based upon an entirely distinct legal theory" from the one Peter now raises on appeal—that he is a beneficiary under section 75-7-103(1)(b) of the Utah Trust Code. *See True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 32, 427 P.3d 338 (quotation simplified). Because Peter did not raise this theory below, he cannot raise it on appeal. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 34, 212 P.3d 535 ("We do not address arguments brought

for the first time on appeal unless the district court committed plain error or exceptional circumstances exist." (quotation simplified)); *Sprague v. Avalon Care Center*, 2019 UT App 107, ¶ 48, 446 P.3d 132. Accordingly, we decline to address it further.

¶32 Second, Peter did not retain the legal right to challenge any trust distribution based on the third amendment to the JEP Trust, which created the POP Trust. As an initial matter, Peter contends certain portions of the original JEP Trust evidence John's intent that Peter was to have a say in matters concerning his share of the JEP Trust, "even though the assets determined to constitute [his] share[] . . . would, ultimately, be transferred from the JEP Trust to the subtrusts and distributed pursuant to the terms thereof." But Peter ignores that the original trust agreement must be interpreted in light of the third amendment, which created the POP Trust.

¶33 The creation of the POP Trust vested legal ownership of all Peter's beneficial rights in the JEP Trust to Selby, as trustee, "to hold and manage . . . for the benefit of beneficiaries." *See Davis v. Young*, 2008 UT App 246, ¶ 18, 190 P.3d 23 (quotation simplified). Moreover, as trustee of the POP Trust, Selby has "exclusive control of the trust property," which includes control over any distribution from the JEP Trust to the POP Trust. *See id.* (quotation simplified). Thus, it is Selby, not Peter, who will benefit from the claim seeking to invalidate the sale of the farm property because she alone controls distributions from the JEP Trust to the POP Trust. Peter is merely a beneficiary of a beneficiary of the JEP Trust; he will receive distributions only from the POP Trust, not the JEP Trust. Therefore, Selby, not Peter, is the real party in interest with standing to bring claims against the JEP Trust.

¶34 Additionally, Peter contends that because he signed the JEP Trust stipulation, which provided that he "specifically reserved *his* claims relating to 'the accounting and the distribution of assets of the JEP Trust'" asserted in his first petition, he retained a direct right under the terms of the JEP

Trust to challenge the distribution of the farm property. This argument fails for three reasons. First, Peter made no claims concerning the distribution of the farm property in his first petition. Second, Peter could not reserve his claim to challenge the October 11, 2017 distribution of the farm property through a stipulation finalized on December 22, 2014, almost three years earlier. And finally, Peter's purported reservation of a claim that he lacked standing to assert simply means that Peter in fact reserved nothing.

¶35    In sum, the district court correctly concluded Peter lacked standing to bring claims against the JEP Trust. The court also correctly determined that Selby, as the trustee of the POP Trust, was the real party in interest with standing to bring the claims. Accordingly, its decision to substitute Selby as petitioner was not an abuse of discretion.[9]

---

9. While the Bank's motion to dismiss and Selby's motion for substitution were pending, Camille Vasquez, in her capacity as guardian ad litem for Clifford Phillips (CJ), a minor son of Johnny, filed a motion to dismiss Peter's first claim (as to CJ only) for declaratory relief to establish that Johnny's children succeeded to Johnny's beneficial interest in the JEP Trust following Johnny's death. Vasquez argued that CJ had "affirmatively waived any interest in the JEP Trust" pursuant to the terms of a settlement agreement among him, his half-siblings, and Johnny's estranged wife in litigation regarding the parties' respective interests in the JCP Estate (the JCP Settlement). In addition, Vasquez argued the doctrine of claim preclusion barred Peter from challenging the validity of CJ's waiver because the issue was previously litigated when the court approved the JCP Settlement.

Peter opposed CJ's motion, asserting CJ's waiver did not qualify as a disclaimer of CJ's beneficial interest. Moreover, Peter asserted he was not precluded from asserting his claim, because

(continued…)

## II. Motion to Intervene

¶36    Peter next contends the district court erred in denying his motion to intervene as of right pursuant to rule 24(a) of the Utah Rules of Civil Procedure. Under rule 24(a), a party attempting to intervene must establish four elements:

> (1) that its motion to intervene was timely, (2) that it has an interest relating to the property or transaction which is the subject of the action, (3) that the disposition of the action may as a practical matter impair or impede its ability to protect that interest, and (4) that its interest is not adequately represented by existing parties.

*Gardiner v. Taufer*, 2014 UT 56, ¶ 17, 342 P.3d 269 (quotation simplified).

¶37    The district court denied Peter's motion to intervene on the grounds that Peter did not meet any of the four requirements of rule 24(a). First, the court found Peter's motion to intervene was untimely because Peter "had actual notice of the proceedings" but waited to file his motion until "after the parties

---

(…continued)
he was not a party to the JCP Settlement and the JCP Settlement was not a final judgment on the merits.

    The district court agreed with Vasquez that CJ's waiver in the settlement divested him of any beneficial interest in the JEP Trust and that the issue had already been adjudicated in the settlement. Accordingly, it dismissed Peter's claim.

    Peter now argues the district court erred in granting Vasquez's motion to dismiss because CJ's waiver was ineffective and the issue had not been adjudicated in the JCP Settlement. We need not reach the merits of this claim because, as discussed in Section I, Peter lacks standing to bring claims against the JEP Trust.

had entered into the settlement agreement and over a year into the litigation." Second, the court concluded Peter failed to claim an interest relating to the JEP Trust because Peter sought intervention solely to challenge Selby's authority to act as trustee of the POP Trust and to remove her as trustee. Third, the court found Peter did not sufficiently explain how the approval of the settlement agreement would impair or impede his ability to protect his claimed interests as a beneficiary of the POP Trust. Fourth, the court held that even if Peter's interests as a beneficiary of the POP Trust were impaired by the approval of the settlement agreement, he failed to satisfy his burden of showing his interests were not adequately represented by Selby.

¶38　We need not address all these issues because we agree with the district court that Peter's motion to intervene was untimely. "Timeliness is determined under the facts and circumstances of each particular case, and in the sound discretion of the court." *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 23, 297 P.3d 599 (quotation simplified). "A party may waive its right to intervene by substantially and unjustifiably delaying its motion to intervene." *Id.* ¶ 24 (quotation simplified). "Generally, a motion to intervene is timely if it is filed before the final settlement of all issues by all parties, and before entry of judgment or dismissal." *Id.* (quotation simplified).

¶39　Peter filed his motion to intervene (and thereby sought to block the court's approval of the fully executed settlement agreement) on November 7, 2019. But the record is unequivocal that Peter was aware of the settlement agreement long before it was finalized and he never objected to it. On May 25, 2019, Selby contacted all the beneficiaries of the POP Trust—including Peter—via email to inform them of a settlement offer from the JCP Estate that would resolve the "farm [property] distribution dispute." The email invited Peter to provide input on the proposed settlement, but he did not raise any objection. Then, on September 25, 2019, Selby again sent Peter an email updating the specific terms of the settlement agreement and asking if he had

any objections to them; again, he raised no objections. On October 4, 2019, all parties entered into the final settlement agreement, which was signed by all parties and filed with the district court on October 31, 2019. But Peter did not file his motion to intervene until seven days later.

¶40    Based on these circumstances, we cannot say the court abused its discretion in finding Peter's motion to intervene was untimely. *See In re Questar Gas Co.*, 2007 UT 79, ¶ 33, 175 P.3d 545 (upholding the denial of a motion to intervene where the "failure to intervene earlier was not for lack of knowledge or notice of the proceedings" and one of the intervenors "originally participated in the proceedings"). Because Peter had actual notice of the settlement agreement for five months and neglected to act, we cannot say the court abused its discretion in finding Peter's motion to intervene was untimely. *See Supernova*, 2013 UT 7, ¶ 24; *see also Republic Ins. Group v. Doman*, 774 P.2d 1130, 1131 (Utah 1989).

¶41    Having concluded the district court did not abuse its discretion in determining that Peter's motion to intervene was untimely, "we can affirm the district court's ruling on intervention without addressing the other requirements of rule 24(a)." *See Parduhn v. Bennett*, 2005 UT 22, ¶ 18, 112 P.3d 495.

CONCLUSION

¶42    The district court properly granted the Bank's motion to dismiss Peter as a party based upon his lack of standing and acted within its discretion in substituting Selby as petitioner because, as trustee of the POP Trust, she is the real party in interest to challenge the farm property distribution. The court also did not abuse its discretion in denying Peter's motion to intervene. We therefore affirm.

––––––––––