2025 UT App 91

## THE UTAH COURT OF APPEALS

ITZEL COX AND BAUDELIO COVARRUBIAS,
Appellees,
*v.*
ARMSTRONG CONSTRUCTION, INC.,
Appellant.

Opinion
No. 20240560-CA
Filed June 12, 2025

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 200903803

Paul W. Jones, Attorney for Appellant

Itzel Cox, Appellee Pro Se

Douglas C. Shumway and Gavin Wenzel,
Attorneys for Appellee Baudelio Covarrubias

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

ORME, Judge:

¶1 Armstrong Construction, Inc. (Armstrong) challenges Baudelio Covarrubias's intervention in a suit between Armstrong and its former customer, Itzel Cox. Because we conclude that, given his assigned right to redeem, Covarrubias had an interest in the property that was the subject of the suit, we affirm the district court's grant of his motion to intervene.

## BACKGROUND

¶2 Cox hired Armstrong to construct a duplex on a lot she owned (the Property). The relationship soured, and Cox

eventually filed a complaint alleging that Armstrong had negligently breached its "duty to properly perform construction services," provided "substandard work," filed a wrongful lien on the Property, and defamed her in pleadings before the Utah Division of Professional Licensing.

¶3    Armstrong counterclaimed, asserting that Cox had breached the construction contract in failing to pay for Armstrong's work, breached the covenant of good faith and fair dealing in improperly terminating Armstrong based on false claims, and commercially disparaged Armstrong. Armstrong then filed a motion for summary judgment on its counterclaims. And Armstrong later filed a second motion for summary judgment on Cox's claims.

¶4    In the meantime, Cox deeded the Property to Covarrubias, which she later claimed she did in satisfaction of a $150,000 debt she owed him. But Covarrubias then transferred the Property to himself and Cox as tenants in common.

¶5    The district court eventually granted summary judgment to Armstrong on both motions, simultaneously dismissing Cox's claims. The day after the court entered its summary judgment ruling, Cox transferred her ownership interest in the Property back to Covarrubias, once again leaving him the sole owner.

¶6    The court then entered final judgment in favor of Armstrong in the amount of $146,475.01, including attorney fees. When Cox failed to pay the judgment, Armstrong filed an ex parte motion asking the district court to schedule a hearing and order Cox to "attend and answer under oath questions about" her assets that could be used to collect on the judgment. The court granted the motion, but Cox failed to appear at the hearing. After being held in contempt, Cox eventually filed a document titled "Answers to Questions About Judgment Debtor's Property" in

which she claimed to have meager savings, substantial debt, and a "Right to purchase interest" in the Property.

¶7 Armstrong then applied for a writ of execution on the Property. At the ensuing execution sale, Armstrong, the only bidder, made a credit bid of $5,000 "for all the right, title, claim and interest of said Itzel Cox in and to" the Property. The certificate of the execution sale provided that the Property remained "subject to redemption in lawful money of the United States of America, pursuant to the statute in such cases made and provided." At a later hearing, Armstrong noted it had purchased "the equitable interest of Itzel Cox" in this sale. The sale left a remaining balance on the judgment, which now totaled $155,291.31, including accrued interest.

¶8 Two months later, Cox emailed Armstrong's counsel asking, "Can you prepare the certificate of redemption so I can drop off the funds of redemption?" Counsel responded, "Armstrong will not redeem the property to you." After noting that Cox had "evaded providing . . . financial information" and claimed to have limited income, Armstrong's counsel said, "Yet you now claim that you have come up with $5,300 to redeem your interest in [the Property]???" He then asked, "Where did you get this money from?" and reminded her that she still owed Armstrong "over $150,000" under the court's final judgment.

¶9 Cox then transferred her remaining "rights, title, claim, and interest" in the Property to Covarrubias, noting that her equitable interest in the Property—i.e., the asserted right to purchase it—had been sold to Armstrong but certifying that, as a "defendant," under rule 69C(b) of the Utah Rules of Civil Procedure she was "entitled to redeem" the Property. The transfer document stated, "For the avoidance of any doubt, by the transfer to Mr. Covarrubias made herein, and for good and valuable consideration, Mr. Covarrubias is authorized to redeem the above real property in my place as a successor in interest."

¶10 Covarrubias then attempted to redeem the Property, sending the amount of the sale price plus interest to Armstrong's counsel as required for redemption. *See* Utah R. Civ. P. 69C(e) ("The price to redeem is the sale price plus six percent."). Armstrong refused to honor Covarrubias's attempted redemption, and Covarrubias filed a motion to intervene in the proceeding between Armstrong and Cox to enforce his redemption right. After a hearing on the motion, the court ruled, "By virtue of the assignment from Ms. Cox of her redemption right to Mr. Covarrubias, [he has the] right to redeem." The court also stated, "Nothing was shown or was found to show that a right of redemption could not be assigned." Based on the assigned right to redeem, the court allowed Covarrubias to intervene and ordered that he be allowed to redeem the Property.

## ISSUES AND STANDARDS OF REVIEW

¶11 On appeal, Armstrong raises several issues related to the district court's grant of Covarrubias's motion to intervene. "A ruling on a motion to intervene encompasses several types of analysis, each subject to a different standard of review." *In re John Edward Phillips Family Living Trust*, 2022 UT App 12, ¶ 23, 505 P.3d 1127 (quotation simplified). "As a general matter, the factual findings underpinning an intervention ruling are subject to a clearly erroneous standard while the district court's legal conclusions are reviewed for correctness." *Id.* (quotation simplified). "We review for correctness the district court's determination of whether the intervenor has claimed an interest relating to the property or transaction which is the subject of the action." *Id.* (quotation simplified). And "we review with some deference the district court's ultimate decision to grant or deny a motion to intervene." *Id.* (quotation simplified).

ANALYSIS

¶12   Armstrong argues that Covarrubias did not have a right to intervene in its suit against Cox. Rule 24(a) of the Utah Rules of Civil Procedure provides,

> On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Here, the district court concluded, "By virtue of the assignment from Ms. Cox of her redemption right to Mr. Covarrubias," he had the "right to redeem" and "[n]othing was shown or was found to show that a right of redemption could not be assigned." Because Covarrubias had a right to redeem the Property, the court concluded that he had "an interest relating to the property or transaction that is the subject of the action," and, accordingly, granted his motion to intervene. Armstrong argues that Covarrubias did not have a right to redeem the Property. But Armstrong concedes, "If he does, then" rule "24(a)(2) would apply." Thus, the viability of Armstrong's argument turns on whether Covarrubias had a right to redeem.[1]

---

1. As Covarrubias points out, the "Statement of the Issues" section of Armstrong's principal brief does not provide the "standard of

(continued…)

¶13 Armstrong asserts that the right to redeem could not be assigned to Covarrubias because the right was not assignable and even if it were, the execution sale extinguished it.[2] We disagree.

## I. Redemption Rights Are Assignable

¶14 "The right of redemption from a sheriff's sale is a statutory right," and the "procedures for exercising the right to redemption are set out in rule 69C of the Utah Rules of Civil Procedure." *Pyper*

---

appellate review with supporting authority" or "citation to the record showing that the [issues were] preserved for review," as required by rule 24(a)(5) of the Utah Rules of Appellate Procedure. But other sections of Armstrong's brief provide the standard of review and record citations from which we are satisfied that these issues were preserved. *See In re B.D.*, 2024 UT App 104, ¶ 37 n.9, 556 P.3d 86 (acknowledging an appellant's failure to demonstrate, with citation to the record per rule 24(a)(5), that the issues he raised on appeal were preserved, but nonetheless addressing the merits because "the rest of [his] brief . . . contain[ed] plenty of citations to the record" that made it "obvious that [he] preserved his main appellate argument"). And though one issue in particular may be unpreserved, because that issue is easily resolved in Covarrubias's favor, we choose to address it anyway. *See infra* note 2. We thus "exercise our discretion and address the merits" of Armstrong's claims. *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 101, 299 P.3d 990.

2. Covarrubias argues that Armstrong failed to preserve any claim about whether the right to redeem is assignable. But, as explained in note 1, "because we can easily dispose of" the merits of this claim, "we choose to exercise our prerogative to simply assume that" the claim was "preserved and proceed to consideration of the merits." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415, *cert. denied*, 496 P.3d 718 (Utah 2021).

*v. Bond*, 2011 UT 45, ¶ 14, 258 P.3d 575. Under rule 69C, "Real property subject to redemption may be redeemed by the defendant or by a creditor having a lien on the property junior to that on which the property was sold *or by their successors in interest*." Utah R. Civ. P. 69C(b) (emphasis added). We have previously held that the phrase "successors in interest" "clearly include[s] assignees." *Tech-Fluid Services, Inc. v. Gavilan Operating, Inc.*, 787 P.2d 1328, 1331 n.3 (Utah Ct. App. 1990) (quotation simplified), *overruled on other grounds by Grazer v. Jones*, 2012 UT 58, 289 P.3d 437. And in laying out the redemption procedure, rule 69C requires the party seeking redemption to "serve on the purchaser: (1) a certified copy of the judgment or lien under which the redemptioner claims the right to redeem; (2) *an assignment, properly acknowledged if necessary to establish the claim*; and (3) an affidavit showing the amount due on the judgment or lien." Utah R. Civ. P. 69C(c) (emphasis added). Thus, the rule plainly provides that the right to redeem is assignable.

¶15    Caselaw confirms this. *See Tech-Fluid Services*, 787 P.2d at 1332 (recognizing that the holder of the redemption right "could properly assign that right" to a third party and affirming that third party's redemption as proper). *See also Grazer v. Jones*, 2011 UT App 51, ¶¶ 3, 16, 249 P.3d 1000 (holding that an assignee properly exercised its right to redeem), *aff'd*, 2012 UT 58, 289 P.3d 437; *Granada, Inc. v. Tanner*, 712 P.2d 254, 255–56 (Utah 1985) (same). We thus conclude that redemption rights are assignable under Utah law.

## II. Execution Sale Did Not Extinguish Redemption Right

¶16    Armstrong argues that even if a right to redeem is assignable, nothing was actually assigned to Covarrubias because—as Armstrong sees it—the right to redeem was sold to it in the execution sale, leaving Cox with nothing to assign. Not so.

¶17 The certificate of the execution sale noted that the Property would be sold to Armstrong "for the sum of $5,000.00, which was the highest bid made for all the right, title, claim and interest of said Itzel Cox." But the certificate explicitly noted that the Property was still "subject to redemption . . . pursuant to the statute in such cases made and provided." In her subsequent assignment of that right to Covarrubias, Cox certified that as a "defendant," under rule 69C(b) she was "entitled to redeem" the Property. And she clarified that by virtue of this assignment, Covarrubias was "authorized to redeem" the Property "in [her] place as a successor in interest." This was all entirely accurate. Far from being extinguished by the execution sale, the redemption right arose as a result of the execution sale. *See Tech-Fluid Services, Inc. v. Gavilan Operating, Inc.*, 787 P.2d 1328, 1332 (Utah Ct. App. 1990) ("The right to redeem is such that it can only be exercised *after* property has been sold at a foreclosure sale, and only those with an interest in the property at the time of the sale (or their successors in interest) have a right to redeem.") (emphasis added), *overruled on other grounds by Grazer v. Jones*, 2012 UT 58, 289 P.3d 437. Thus, the right to redeem was not included in the "right, title, claim and interest" sold to Armstrong. Cox obtained the right to redeem the Property at the time of the sale, which she then transferred to Covarrubias.

¶18 In view of this, as Armstrong concedes, this means Covarrubias had "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede" his "ability to protect" his interest. *See* Utah R. Civ. P. 24(a)(2). Thus, the district court properly granted Covarrubias's motion to intervene.[3]

---

3. Curiously, although the deeds were written and seemingly comply with the statute of frauds, Armstrong also argues that the

(continued…)

CONCLUSION

¶19    Because Covarrubias had the right to redeem the Property, he had an interest relating to the property involved in the suit between Armstrong and Cox, and the district court properly permitted him to intervene. We affirm.[4]

————————

three deeds conveying the Property back and forth between Cox and Covarrubias violated the statute of frauds. But this appeal concerns only the right to redeem, which was transferred to Covarrubias in a separate assignment, the validity of which Armstrong does not challenge on statute-of-frauds grounds.

4. Covarrubias seeks an award of attorney fees under rule 33 of the Utah Rules of Appellate Procedure for Armstrong's "frivolous appeal." But this "sanction for bringing a frivolous appeal is applied only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Staszkiewicz v. Thomas*, 2024 UT App 183, ¶ 23 n.3, 562 P.3d 723 (quotation simplified), *cert. denied*, 568 P.3d 260 (Utah 2025). While Armstrong's appeal was ultimately without merit, we cannot say that it was so "egregious" as to warrant such a sanction, and we thus decline to award attorney fees. *See id.*